In re ZENERGY, INC., Joe Pool, Aaron Hees, William Davidson, John Stover, and Minter, Joseph & Thornhill, P.C., Relators.

No. 13–97–310–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 11, 1997.

Donald B. Edwards, Smith & Edwards, Corpus Christi, for Relator.

Raymond L. Thomas, Thomas & Ramirez, McAllen, David H. Jones, Edinburg, for Real Parties.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and CHAVEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Relators, Zenergy, Inc., Joe Pool, Aaron Hees, William Davidson, John Stover, and Minter, Joseph & Thornhill, P.C., ask this Court to issue a writ of mandamus ordering respondent, the Honorable Joe B. Evins, Judge of the 206th District Court of Hidalgo County, to withdraw a discovery sanctions order, dated June 3, 1994, and a contempt order, dated May 27, 1997. The real parties in interest are V.F. Neuhaus Properties, Inc. and the V.F. Neuhaus M.D. Trust (collectively "Neuhaus"). We deny relators' request for a writ of mandamus.

### 1. BACKGROUND

Neuhaus owns an interest in land known as the Schaleben Lease, located in Hidalgo County. Zenergy, Inc., a Texas corporation, was formed by Aaron Hees and Joe Pool for the purpose of drilling test wells. In June 1991, Zenergy and Neuhaus agreed that Zenergy would drill a test well on the property. The terms of the agreement were inscribed in a letter from Neuhaus, dated June 10, 1991, and accepted and executed by Zenergy on June 30, 1991. Under the terms of the letter agreement, Zenergy was to drill a test well on specified acreage by October 1, 1991, in exchange for a 75% working interest in land known as the "Neuhaus acreage." Neuhaus was to transfer the interest to Zenergy within fifteen days after Zenergy signed the letter agreement. In addition, Neuhaus agreed to provide Zenergy with (1) all drilling and division order title opinions and (2) all surveys and regulatory requirements. The test well was not drilled, however, and Zenergy, Pool, and Hees (collectively "Plaintiffs") sued Neuhaus for breach of contract as well as violations of the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA").[1]

Plaintiffs' petition alleged that Neuhaus breached the contract by failing to assign to Zenergy the 75% working interest in the Neuhaus acreage within fifteen days of the execution of the letter agreement. The petition also alleged that Neuhaus had not provided the required drilling and division order title opinions, surveys, and regulatory approvals. Zenergy claimed that drilling could not commence on the test well because Neuhaus had not abided by the agreement.

Neuhaus responded that under the terms of the letter agreement, it was not required to perform. Specifically, Neuhaus claimed that its duty to transfer the working interest was discharged by impossibility and impracticability of performance because Zenergy had not returned the executed letter agreement to Neuhaus until early August 1991, more than fifteen days after the execution date of June 30, 1991. Neuhaus also claimed anticipatory breach because Zenergy had not been able to obtain the investors and financing necessary to drill the well. In addition, Neuhaus counterclaimed for DTPA violations, civil conspiracy, negligent misrepresentation, fraud, and breach of contract. The counterclaim further alleged that Zenergy was the alter ego of Hees and Pool.

### 2. THE DISCOVERY PROCESS

On January 8, 1993, Neuhaus filed a notice of intent to take the oral depositions of the plaintiffs. Attached to the notice was a *subpoena duces tecum* which sought the production of thirty-one categories of documents. Plaintiffs objected to several of the requests. On January 15, 1993, Neuhaus filed a motion to compel, and a hearing was held January 30, 1993. The parties then agreed that certain documents would be produced. Pool's

---

1. TEX. BUS & COM.CODE ANN. §§ 17.41 *et seq.* (Vernon 1987 & Supp.1997).

deposition began on January 20, 1993, and continued periodically over the course of the next several months. During the depositions, Pool repeatedly agreed to produce Zenergy's records and documentation to support the plaintiffs' claims. Although some documents were produced, Pool failed to produce Zenergy's franchise tax reports and evidence supporting the damage claims. On February 3, 1993, Neuhaus supplemented its request by letter, seeking among other things, records reflecting the financial condition and net worth of Hees and Pool from August 1989 to February 1993. Neuhaus explained that such documentation was relevant to its amended counterclaim, which included the alter ego allegation. The financial information was not produced.

On March 30, 1993, Neuhaus filed a second motion to compel. In this motion, Neuhaus sought production of the financial records of Hees and Pool. After a hearing, the trial court ordered[2] the plaintiffs to produce (1) corporate and individual income tax records for 1989, 1990, 1991, and 1992, and (2) complete bank statements for every month since the date of Zenergy's incorporation. Production was to occur in Austin, Texas at the offices of Minter, Joseph & Thornhill, P.C. The record contains no evidence that Neuhaus ever availed itself of such production or that the records were actually available.

Neuhaus served its First Set of Interrogatories on the plaintiffs on April 4, 1993. Neuhaus received answers on May 17, 1993, and supplemental answers on June 29, July 7, and July 14, 1993. Hees objected to interrogatories 11, 12, and 13, and Pool and Zenergy objected to interrogatories 9, 10, and 11. On June 8, 1993, Neuhaus filed a third motion to compel claiming that the plaintiffs' answers were incomplete, evasive, and deceptive. In response, the plaintiffs filed a motion for protective order (1) asserting that the motion to compel was without merit because all interrogatories had been fully answered, (2) contending that Neuhaus had filed the motion to compel solely for the purposes of harassment and annoyance, and (3) asking $2,000.00 as sanctions. During the hearing on the motion to compel, held on

July 15, 1993, John Stover represented to the trial court that, with the supplemental answers filed on July 14th, all of Neuhaus's discovery requests had been satisfied. Neuhaus was provided a copy of the supplemental answers at the hearing and later learned from a private investigator that Stover's representations that all discovery requests had been satisfied were false. After the hearing, the trial court signed an order compelling plaintiffs:

1) to exercise reasonable diligence and good faith to provide the addresses and phone numbers for Bob Ellis, Bob Burzack, Rod McCullough, Gail Wood, Doug Anderson, and Reynell Ewald;

2) to exercise reasonable diligence and good faith to provide the identity of all legal proceedings in which they had been involved during the last ten years, or in which they were currently involved, including the cause number, the parties involved, and the court;

3) to provide complete answers for specified interrogatories (those for which there were objections);

4) to itemize all damages, noting the specific dollar amount next to each category of damages; and

5) to provide a preliminary breakdown and calculations for each element of damage claimed.

On June 30, 1993, the plaintiffs filed a motion for partial summary judgment on Neuhaus's counterclaim. The motion asserted that summary judgment was proper because Neuhaus was not a "consumer" as defined by the DTPA. The motion also alleged that Neuhaus had no actionable claim for negligent representation and no proof of the elements of common law fraud or alter ego. The financial status of the plaintiffs at the time for performance on the agreement was relevant to some of the motion's allegations.

Also essential to some allegations was the availability of a drilling rig at the time of performance. The plaintiffs knowingly relied on a letter from Flournoy Drilling Company which falsely stated that a rig was available.

2. The trial court signed the order on June 3, 1993.

In an affidavit attached to Neuhaus's response to the motion for summary judgment, Larry Burnet, the author of the letter, stated that no contract for a rig existed between Flournoy and Zenergy, that no rig was available on October 1, 1991, and that Hees had asked for the letter drafted by Burnet, specifying its contents.

On July 21, 1993, Neuhaus filed a motion for sanctions alleging that plaintiffs (1) had failed to comply with the *subpoena duces tecum* as well as the subsequent agreement to produce documents, (2) had resisted discovery of financial information which the trial court had ordered disclosed, (3) had failed to supplement discovery, and (4) had failed to adequately respond to interrogatories which the trial court had ordered plaintiffs to answer. Neuhaus also alleged in the motion that the discovery abuses had been furthered by the plaintiffs' Austin counsel,[3] William C. Davidson, John D. Stover, and Minter, Joseph & Thornhill, P.C. Neuhaus sought sanctions, including a dismissal with prejudice of plaintiffs' claims against Neuhaus and a default judgment in favor of Neuhaus's counterclaims. Neuhaus also sought recovery of legal fees, expenses, and court costs which it had incurred during the discovery process, as well as a $100,000.00 monetary sanction, from the plaintiffs and their Austin counsel.

A hearing on the motion was initially set for July 27, 1993, and then reset for July 30th. On July 27th, Hees filed his third supplemental answers to Neuhaus's interrogatories and finally disclosed a relevant bankruptcy proceeding. During the course of several evidentiary hearings which began on July 30th, Neuhaus produced evidence of numerous discovery violations uncovered through the efforts of a private investigator which it hired for that purpose.

The evidence reflects that Hees and Pool totally failed to disclose at least four legal proceedings in which they were involved. Other proceedings involving Hees and Zenergy were vaguely referred to in deposition testimony or were inaccurately styled in interrogatory answers. For instance, Hees provided an inaccurate style for one case and

failed to provide a cause number until the trial court compelled him to do so. That cause had been consolidated with another case, and a default judgment in the amount of $3.5 million was rendered against Hees after his pleadings were struck for discovery abuses. Hees claimed that because he had provided Neuhaus with the inaccurate case style, and finally the cause number, he had also disclosed the second case and the ancillary bankruptcy actions which had resulted from the default judgment. Hees and Pool also failed to provide information concerning at least five corporations in which one or the other was involved during the time frame specified in the interrogatories.

Documentation to support damage claims was never produced. Hees and Pool both testified in depositions that Zenergy's performance under the agreement was financially supported by Bob Burczak. Burczak's correct legal first name, Boguslaw, was never disclosed and his last name was misspelled in interrogatory answers. In addition, the addresses and telephone numbers of persons having potentially relevant information about the case were missing or incomplete for several persons, including Burczak. Some of these persons worked with the plaintiffs at or near the time of the agreement, and Neuhaus believed that deposing them was vital to its defense. Bill Morris, a person involved in the formation and incorporation of Zenergy, was never named in any of the depositions or interrogatory answers. Neuhaus informed Judge Evins that it considered Morris's testimony to be relevant to its claims of alter ego and fraud.

Finally, Judge Evins was informed that Stover had threatened to file barratry charges against Neuhaus's counsel if Neuhaus did not abandon its motion for sanctions. The record contains no controverting or explanatory evidence concerning the threat.

In April 1994, Neuhaus informed Judge Evins by letter that an ongoing investigation had uncovered yet another business in which Pool had an interest and that the business

---

3. Plaintiffs were also represented by counsel associated with the Law Offices of John King of McAllen. Neuhaus made no allegations of wrongdoing against these attorneys.

had been involved in a legal proceeding since 1989, which had also not been disclosed. Hees had been deposed in connection with the lawsuit. Neuhaus asserted that the litigation was settled in 1993, and that Hees and Pool had signed the settlement agreement which yielded the men substantial interests in mineral properties. Although the pleadings and some depositions from that lawsuit appear in the record, we find no evidence of the settlement agreement.

After taking judicial notice of the entire record, Judge Evins signed a sanctions order on June 3, 1994, which imposed the following:

1) All plaintiffs' offensive pleadings were struck, and all claims against Neuhaus were dismissed with prejudice;

2) No evidence was permitted which rebutted Neuhaus's alter ego allegations and its claims of financial inability to perform on the agreement;

3) Relators were ordered to pay $20,200.00 as investigation costs and attorneys' fees;

4) Relators were further ordered to pay a monetary sanction of $50,000.00;

5) Costs and the monetary sanction were imposed on relators jointly and severally;

6) The motion for partial summary judgment was denied;

7) All expenses, fees, and monetary sanctions were to be paid within fifteen days from the date of the order;

8) The remainder of plaintiffs' pleadings would be struck in the event they failed to comply with the sanctions order; and

9) Plaintiffs would pay attorneys' fees and costs in the event of a mandamus proceeding before the court of appeals and/or the supreme court.

Relators did not pay the expenses, fees, and sanctions ordered by the trial court. The sanctions order prompted various attempts to obtain mandamus relief and, ultimately, the trial court issued a contempt order against relators for the unpaid monies.

### 3. EVENTS POST-JUNE 1994

On September 2, 1994, relators first sought leave from this Court to file a petition for a writ of mandamus against Judge Evins. We initially granted leave to file. However, after considering the response from the real parties in interest, we determined that leave to file had been improvidently granted. The response asserted that the trial on Neuhaus's counterclaim had been set for September 2, 1994—the very day relators initiated mandamus proceedings in this Court. Trial was reset for September 6th and then again for September 21, 1994. We concluded that an appealable judgment was imminent and denied leave to file on that basis. *Zenergy v. Hon. Evins,* No. 13-94-419-CV, (Tex.App.—Corpus Christi Sept. 15, 1994, orig. proceeding). Nevertheless, we ordered Judge Evins to reform the sanctions order by deleting the payment of fees and costs in the event of a mandamus proceeding in this Court and/or the supreme court. *Id.*

The parties then agreed to pass the September 21st trial date and filed a joint motion for leave to file a petition for writ of mandamus. After we denied leave to file, relators sought leave to file with the supreme court, which was denied on December 1, 1994. The supreme court denied a motion for reconsideration on January 12, 1995. Relators subsequently filed a motion for reconsideration of the sanctions order with the trial court, and the motion was denied in February 1996.

Eventually, trial on Neuhaus's counterclaim was set for April 14, 1997. On March 19, 1997, however, Neuhaus filed a motion for contempt contending that the plaintiffs had violated the sanctions order. After several hearings on the motion, Judge Evins found relators in contempt. Relators were each ordered to be confined in the county jail for five days for failure to pay the money sanctions and five days for not paying the expenses and fees. Judge Evins ordered that relators should continue to be confined in the county jail until the money sanctions and expenses and fees were paid in full. In addition, each relator was ordered to pay an additional $500 for each monetary amount not paid. Enforcement of the contempt order was suspended for sixty days to allow relators to again petition this Court for mandamus relief. This request for a writ of mandamus followed.

#### 4. BASIS OF RELIEF SOUGHT

Relators complain that they have no adequate remedy by appeal because respondent abused his discretion by imposing death penalty sanctions without a simultaneous rendering of a final appealable judgment. Relators also contend that the sanctioned behavior does not warrant a finding that the original cause of action was without merit, thereby justifying the striking of offensive pleadings. Relators assert that sanctions were imposed for discovery on file, but not considered by respondent at the time that he issued the order. In addition, relators argue that respondent ordered death penalty sanctions without first attempting lesser sanctions.

Relators' other complaints focus on the monetary sanctions imposed. Relators contend that the $50,000.00 monetary sanction bears no relation to injuries, if any, suffered by Neuhaus, and that the $20,200.00 sanction for expenses and fees is excessive. They complain that the monetary sanctions were imposed on all relators jointly and severally rather than on the person actually responsible for the conduct. Relators further contend that sanctions favoring V.F. Neuhaus Properties, Inc. were improper because that party never propounded its own discovery requests, never moved to compel, and never moved for sanctions. Finally, relators argue that because the sanctions order is vague and void, the contempt order is also void.

#### 5. APPLICABLE STANDARDS

##### a. *Mandamus Relief*

■ Mandamus will not issue where there is a clear and adequate remedy at law, such as a normal appeal. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992); *State v. Walker*, 679 S.W.2d 484, 485 (Tex.1984). Mandamus is intended to be an extraordinary remedy, available only in limited circumstances. *Packer*, 827 S.W.2d at 840. The requirement that persons seeking mandamus relief establish the lack of an adequate appellate remedy is a fundamental tenet of mandamus practice. *Id.; Holloway v.* *Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex.1989).

■ Mandamus will issue to compel the performance of a ministerial act or duty[4] or to correct a clear abuse of discretion.[5] *Lanfear v. Blackmon*, 827 S.W.2d 87, 91 (Tex. App.—Corpus Christi 1992, orig. proceeding). A trial court clearly abuses its discretion "if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985).

■ Factual issues decided by the trial court, or other issues in which the judge has discretion, will not be disturbed unless the evidence is such that the court could have reached only the contrary decision. *GTE Communications v. Tanner*, 856 S.W.2d 725, 729 (Tex.1993); *Packer*, 827 S.W.2d at 839–40; *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 919 (Tex.1991); *Johnson*, 700 S.W.2d at 918. However, a trial court's decisions on matters of law are not afforded the same deference as its factual conclusions. *TransAmerican*, 811 S.W.2d at 919. A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ. *Packer*, 827 S.W.2d at 840; *TransAmerican*, 811 S.W.2d at 919.

■ The Texas Rules of Civil Procedure provide that orders imposing discovery sanctions shall be subject to review on appeal from the final judgment. TEX.R. CIV. P. 215(3). However, sanctions should not be imposed in such a way that effective appellate review is thwarted. *TransAmerican*, 811 S.W.2d at 919; *Braden v. Downey*, 811 S.W.2d 922, 930 (Tex.1991). Whenever a trial court imposes sanctions which have the effect of adjudicating a dispute, whether by striking pleadings, dismissing an action or rendering a default judgment, but which do not result in rendition of an appealable judgment, then the eventual remedy by appeal is

---

**4.** *See Packer*, 827 S.W.2d at 839; *Wortham v. Walker*, 133 Tex. 255, 128 S.W.2d 1138, 1150 (1939).

**5.** *See Joachim v. Chambers*, 815 S.W.2d 234, 237 (Tex.1991).

inadequate. *TransAmerican,* 811 S.W.2d at 919. When a trial court imposes discovery sanctions which have the effect of precluding a decision on the merits of a party's claims— such as by striking pleadings, dismissing an action, or rendering default judgment—a party's remedy by eventual appeal is inadequate, unless the sanctions are imposed simultaneously with the rendition of a final, appealable judgment. *Id.* at 920. If such an order of sanctions is not immediately appealable, the party may seek review of the order by petition for writ of mandamus. *Id.*

Because the actions of the trial court, in this case, had the effect of adjudicating relator's case, but did not result in the rendition of an appealable judgment mandamus relief may be proper. *See TransAmerican,* 811 S.W.2d at 919; *Lanfear* 827 S.W.2d at 91. Therefore, we will consider the merits of relators' complaints.

### b. *Sanctions*

A trial court may impose sanctions on any party abusing the discovery process. TEX.R. CIV. P. 215; *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex. 1986) (per curiam). The discovery sanctions imposed by a trial court are within the court's discretion and will be set aside only for a clear abuse of discretion. *Id.* Abuse of discretion occurs when the trial court acts without reference to any guiding rules and principles, *i.e.,* whether the action was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). If the sanctions imposed are not just, a trial court abuses its discretion. *TransAmerican,* 811 S.W.2d at 917; *see* TEX.R. CIV. P. 215(2)(b).

To determine whether sanctions are just we apply a two-prong test. *TransAmerican,* 811 S.W.2d at 917. The first prong requires that a direct relationship exist between the offensive conduct and the sanction imposed. *Id.*; *Lanfear,* 827 S.W.2d at 90. Under this prong, the trial court should attempt to determine if the offensive conduct is attributable to the attorney, the party, or both. *Lanfear,* 827 S.W.2d at 90. The second prong requires that the sanctions fit the "crime;" they must not be excessive.

*TransAmerican,* 811 S.W.2d at 917; *Lanfear,* 827 S.W.2d at 90.

Sanctions which are so severe that they preclude presentation on the merits should not be assessed absent a party's bad faith or counsel's flagrant disregard for the responsibilities of discovery under the rules. *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992); *Lanfear,* 827 S.W.2d at 90. Discovery sanctions should not be used to adjudicate the merits of a claim or defense unless a party's obstruction of the discovery process justifies the presumption that the claim or defense lacks merit. *TransAmerican,* 811 S.W.2d at 918; *Lanfear,* 827 S.W.2d at 90. Even then, lesser sanctions should be tested first to determine if they are adequate to secure compliance, deterrence, and punishment of the offender. *Chrysler,* 841 S.W.2d at 849; *Hamill v. Level,* 917 S.W.2d 15, 16 n. 1 (Tex.1996) (per curiam). However, in exceptional situations, determinative sanctions may be imposed in the first instance when they are clearly justified and no lesser sanctions will promote compliance. *GTE Communications,* 856 S.W.2d at 729; *Marshall v. Ryder Sys., Inc.,* 928 S.W.2d 190, 197 (Tex. App.—Houston [14th Dist.] 1996, writ denied); *see TransAmerican,* 811 S.W.2d at 919.

### 6. APPLICATION

#### a. *Direct Relationship*

Judge Evins concluded that a direct relationship existed between the sanctions imposed and the offensive conduct of relators. He reasoned (1) that relators intentionally withheld material evidence in response to valid discovery requests while misrepresenting to the court and Neuhaus that these same requests had been fully answered; (2) that relators filed a Motion for Summary Judgment on the very issues which were affected by the withheld information; and (3) that relators gave false testimony concerning their failure to comply with discovery requests. The following findings form the basis of Judge Evins' rationale:

- The business endeavors of Pool and Hees, including the business endeavors undisclosed are relevant to the alter ego issue and to the issues concerning financial strength.
- No objections were raised to interrogatories related to legal proceedings, business endeavors, and persons with relevant information.
- Hees' bankruptcy proceedings were material to Neuhaus's ability to adequately defend the lawsuit, and Hees failed to disclose such information until a motion for sanctions was entertained by the trial court.
- Davidson represented Hees in the bankruptcy proceeding, knew Hees was in bankruptcy, and allowed as well as assisted Hees in refusing to reveal this information. Davidson misrepresented to the trial court that all legal proceedings were disclosed.
- Information regarding other legal proceedings involving Hees, Pool, and Zenergy was also undisclosed. One or more of these causes were material because issues similar to those litigated in this case were involved. In one instance, a substantial judgment was entered against Hees on claims for conspiracy, fraud, and alter ego.
- Plaintiffs knew the answers were false and incomplete. Justification offered by plaintiffs and their Austin Counsel for failing to reveal the information was not credible.
- Plaintiffs and their Austin Counsel deliberately withheld relevant information about persons with knowledge of material facts, especially for Boguslaw Burczak, Gayle Wood, and Reynell Ewald.
- Plaintiffs and their Austin Counsel deliberately withheld identification of business endeavors as requested by the interrogatories. After attempts to compel disclosure of such information, relators misrepresented their compliance to the court and Neuhaus.
- Evidence withheld was relevant to Neuhaus's ability to defend against the motion for summary judgment filed by plaintiffs. The undisclosed information would have demonstrated that there was no legal or factual basis for summary judgment.
- Plaintiffs and their Austin Counsel failed to produce invoices, receipts, or other documentation to support their claims for out-of-pocket expenses. The record reflects that Davidson stated no such documentation exists. Thus, the claim appears to be a fabrication.
- No documentation has been produced to support a claim for lost profits.
- The spreadsheets used in preparing Zenergy's tax returns were not attached to Hees' deposition as asserted by counsel during argument on the motion for sanctions.
- Plaintiffs and their Austin Counsel represented in open court, in filed motions, depositions, and correspondence with Neuhaus that the interrogatory answers were true and complete.
- Austin counsel knew and participated in plaintiffs' incomplete and knowingly false interrogatory and discovery answers. In addition, counsel made deliberate misrepresentations to the court concerning the completeness and accuracy of the discovery responses.

Because the record supports the trial court's findings, we conclude that there is a direct relationship between the sanctions and the offensive conduct. In addition, the trial court accurately determined that the offensive conduct is attributable to both Austin counsel and the parties.

### b. Excessive Sanctions

 Judge Evins concluded that relators repeatedly engaged in flagrant bad faith and callous disregard for the discovery rules and created a significant burden on the court system by consuming judicial time and expense. The judge described the misconduct as "among the most serious affronts to the judicial system that a litigant can make." The sanctions order also states that "false testimony, refusal to comply with the Court's orders, obstruction of the discovery process and failure to provide any evidence of actual damages ... justifies the presumption that

their claims lack merit." As a result, Judge Evins struck plaintiffs' pleadings. These conclusions are supported by the record.

After hearing the evidence, considering the record, and recalling the entire history of the litigation, Judge Evins could have properly determined that death penalty sanctions were justified in this situation. Certainly, relators engaged in an extensive course of flagrant discovery abuse by failing to disclose and by misrepresenting the disclosure of properly requested information that would have facilitated Neuhaus in determining what defenses, if any, were appropriate. Moreover, because of the failure to produce documentation to support damage claims, the judge could have presumed plaintiffs' claims lacked merit. After all, the lawsuit was initiated by plaintiffs, and the trial court could assume that some evidence of damages existed at the time the cause of action was filed. Without such documentation, the trial court was left with no other conclusion than that the case lacked merit.

■ Relators contend that Judge Evins abused his discretion because he imposed death penalty sanctions before testing lesser sanctions. However, the sanctions order was not imposed after a one-day hearing. Instead, sanctions proceedings began in July 1993 and were not concluded until June 1994. Knowing that sanctions were imminent, relators continued to withhold information about another business venture involving Pool and a legal proceeding involving both Hees and Pool. They also made no apparent attempt to produce the documentation to support their damage claims. While it is true that Judge Evins imposed a freeze order on discovery during the pendency of the sanctions proceedings, this should not have precluded attempts to get the information before the court. Finally, Judge Evins was aware that similar sanctions for discovery abuses in a previous lawsuit had resulted in a $3.5 million judgment against Hees and that Pool and Davidson knew this fact. Yet, the three men proceeded to engage in similar conduct before Judge Evins. Thus, Judge Evins could have properly concluded that lesser sanctions would not have been effective in compelling compliance.

Having found that the sanctions were directly related to the offensive conduct, that the sanctions were not excessive under the circumstances, and that lesser sanctions were not likely to be effective, we cannot say that Judge Evins clearly abused his discretion by imposing death penalty sanctions.

■ Relators further complain of the monetary sanctions. They rely on *Bodnow* to support their assertion that imposing joint and several liability for the monetary sanctions was an abuse of discretion. We do not read *Bodnow* to hold that joint and several liability for sanctions is never proper. In that case, the supreme court held that one party cannot be made jointly and severally liable for discovery abuses *solely* attributable to another party. *Bodnow*, 721 S.W.2d at 840. However, *Bodnow* does not apply in a situation where, as in the case at hand, the abuse was the result of the interwoven conduct of the parties and counsel. Counsel knew of the parties' discovery abuses and yet condoned the conduct by making misrepresentations of compliance to the court. We hold that Judge Evins did not abuse his discretion by imposing joint and several liability for the monetary sanctions.

■ Relators contend that the monetary sanctions are excessive and unsupported by the evidence. However, these contentions have not been preserved for mandamus relief. Relators did not complain and obtain an adverse ruling from the trial court on their inability to pay the sanctions or that payment would preclude their ability to continue with the litigation. *Braden*, 811 S.W.2d at 929. Because these issues can be reviewed on appeal, we conclude that mandamus relief is not appropriate.

### c. *Contempt Order*

■ As for the contempt order, we conclude that mandamus relief is not proper in this situation. The validity of a contempt judgment is generally attacked collaterally

by way of *habeas corpus*. *Deramus v. Thornton*, 160 Tex. 494, 333 S.W.2d 824, 827 (1960). However, relying on *Deramus* and *Rosser v. Squier*,[6] relators assert that mandamus relief is appropriate because a contempt fine was assessed, and a contempt fine is not subject to review by *habeas corpus*. We find relators' reliance to be misplaced. Neither case stands for the proposition that the fine imposed may be considered separately from any confinement assessed. Although in *Deramus* the supreme court explained that mandamus relief might be appropriate in some circumstances, the court denied writ in a contempt situation similar to the one before us where the trial court imposed but suspended fines and confinement. 333 S.W.2d at 826–27. In *Rosser*, mandamus review was proper because the contempt order at issue assessed no confinement thus precluding *habeas corpus* relief. 902 S.W.2d 962, 962 (Tex.1995). In addition, the amount of the fine assessed in *Rosser* was clearly outside the trial court's jurisdiction. *Id.* (holding that $45,000 fine exceeded trial court's jurisdiction because Texas Government Code only allows $500 fine for each violation). Because the contempt judgment in this case assesses both fines and confinement, we conclude that relief, if necessary, will come through *habeas corpus* review when and if Judge Evins enforces the judgment.

Accordingly, we deny relators' request for a writ of mandamus. We also lift the stay which we previously ordered.