

NUMBER 13-07-00292-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**JEFFREY BUCK,**                                                     **Appellant,**

**v.**

**ESTATE OF LILLIAN M. BUCK AND OSCAR A. BUCK,
ADMINISTRATOR AND INDEPENDENT EXECUTOR
OF THE ESTATE OF LILLIAN M. BUCK, DECEASED,**          **Appellee.**

---

**On appeal from the County Court at Law No. 4
of Nueces County, Texas.**

---

# O P I N I O N

**Before Justices Yañez, Rodriguez, and Benavides
Opinion by Justice Rodriguez**

This is an appeal from the denial of a statutory bill of review filed to set aside a

death penalty sanction in a probate case.[1] By two issues, appellant Jeffrey Buck, grandson

---

[1]Appellant Jeffrey Buck filed his statutory bill of review to set aside a September 27, 2004 death penalty sanction order and a September 28, 2004 order that admitted his grandmother's 1981 will to probate. Jeffrey states that he is appealing from both orders. However, because Jeffrey's contentions relate only to the sanctions order and because our determination of those issues is dispositive of this appeal, we need not address the trial court's probate order. *See* TEX. R. APP. P. 47.1.

of the late Lillian M. Buck and son of appellee Oscar A. Buck, contends that the statutory bill of review was proper to correct substantial errors committed by the probate court when it struck his pleadings which included, among other things, his application to probate a 1996 will allegedly executed by his grandmother. We affirm.

## I. Background

The present suit concerns proceedings that occurred during the probate of the estate of Lillian M. Buck. In 1981, Lillian executed a will leaving her estate to her husband and, if he was not living at the time of her death, to her three sons. This was followed by a first codicil in 1985, which appointed Oscar independent executor.

From 1989 to 1997, Lillian lived with Jeffrey. In 1996, Lillian allegedly executed another will revoking her earlier one. The 1996 will left everything to Jeffrey.

In March 2001, Lillian died, and in April 2001, Oscar applied to the probate court to be appointed administrator of his mother's estate. A few weeks later, Jeffrey filed an application for probate of the 1996 will and for issuance of letters testamentary. In response, Oscar filed an opposition, alleging numerous challenges to the validity of the 1996 will. In May 2001, the probate court appointed Oscar temporary administrator. This appointment was unopposed by agreement of the parties.

After Oscar filed his first motion for sanctions because of Jeffrey's failure to appear at his scheduled deposition, the parties agreed that no hearing would go forward because they had reached an agreement to reschedule Jeffrey's deposition. However, after Jeffrey did not appear at his deposition a second time, Oscar filed a second motion for sanctions asking the probate court to declare the 1996 will invalid, strike Jeffrey's pleadings, order Jeffrey to pay Oscar's attorney's fees, and appoint Oscar permanent administrator. The

2

probate court granted the motion for sanctions, in part, ordering Jeffrey to appear for his deposition on a date certain and to pay Oscar $600 in attorney's fees no later than that same date.

After Jeffrey failed to appear for his deposition a third time and did not pay the $600 in fees, Oscar filed a third motion for sanctions asking the probate court to declare the 1996 will invalid, strike Jeffrey's pleadings, and order Jeffrey to pay additional fees. Again, the probate court granted the motion, in part, ordering Jeffrey to appear for his deposition on a specific date and to pay additional fees. The court also warned Jeffrey that if he failed to abide by the order, it would strike his pleadings.

After the probate court entered this order, Jeffrey appeared for his scheduled deposition but did not pay Oscar's attorney's fees. Through his deposition testimony, Oscar discovered that Jeffrey had used or caused to be transferred from his grandmother's Merrill Lynch account some $800,000 in stock and that all the proceeds had been spent or lost.[2] Based on this testimony, Oscar filed his fourth motion for sanctions asking the court to strike Jeffrey's pleadings. The probate court did not strike Jeffrey's pleadings but did order that the previous amounts of money the court had ordered Jeffrey to pay be reduced to judgment and that by August 9, 2001, Jeffrey was to provide Oscar with a sworn accounting showing use of all assets drawn from the Merrill Lynch account for a three-year period beginning December 18, 1997.

Jeffrey failed to provide the sworn accounting, and on August 15, 2001, Oscar filed his fifth motion for sanctions requesting that the trial court strike Jeffrey's pleadings.

---

[2]The account was allegedly co-owned by Lillian and Jeffrey. However, the record reflects that Lillian's doctor attested that she would not have had the mental capacity to open a joint account with Jeffrey at Merrill Lynch. Oscar ultimately reached a settlement with Merrill Lynch which was approved by the probate court.

Following a hearing on August 21, 2001, the probate court issued an order striking all pleadings filed by Jeffrey. The court also appointed Oscar permanent administrator.

In September 2003, Jeffrey again filed an application to probate the 1996 will, which designated him as the executor and the only devisee of Lillian's estate. Jeffrey also requested the removal of Oscar as administrator and petitioned for an accounting. Oscar contested everything and noticed Jeffrey for his deposition. When Jeffrey failed to appear for this deposition, Oscar again filed a motion for sanctions, asking that Jeffrey's new pleadings be stricken and that Jeffrey be ordered to pay attorney's fees.

In April 2004, Oscar filed an application to probate the 1981 will. He also filed a motion to rule on costs. *See* TEX. R. CIV. P. 143 (providing that the trial court may order a party to give security to cover accrued costs of the trial, and if the party does not file the security, the court may dismiss the suit). The probate court ordered Jeffrey to appear at a September 10, 2004 hearing on Oscar's motion for costs. When Jeffrey did not appear at the hearing, the probate court ordered him to pay security for costs in the amount of $5,000 on or before October 5, 2004, and if he did not pay, all of his claims "shall be denied and dismissed."

On September 16, 2004, Oscar again moved for sanctions, this time for Jeffrey's failure to appear at the September 10, 2004 hearing. In this motion, Oscar asked the probate court to strike Jeffrey's pleadings and order him to pay an additional $750 in attorney's fees. The hearing on this motion was set for September 22, 2004. Notice of the hearing was served on Jeffrey's attorney of record. The actual hearing took place on September 27, and it is undisputed that Jeffrey appeared and was in court for that hearing, although his attorney was not. At the September 27 hearing, the probate court struck

4

Jeffrey's pleadings.[3]  The probate court also ordered Jeffrey to pay $750 to Oscar.  In addition, the probate court set Oscar's application to probate the 1981 will for hearing, and on September 28, 2004, the court admitted the 1981 will to probate.

On September 28, 2006, Jeffrey filed a bill of review seeking to set aside the sanctions order entered on September 27.  Appellant alleged, in part, that the death penalty sanction dismissing his application to probate the 1996 will was an abuse of discretion because it was issued without proper notice to Jeffrey and without any evidence offered at the hearing to support the sanction.  Jeffrey also contended by his bill of review that the record reflected that on September 27, 2004, both Jeffrey and Oscar had pending respective applications to probate wills set for trial on the merits on October 4, 2004, and that it was substantial error for the probate court not to hear both applications and determine which instrument should be admitted to probate.

On April 4, 2007, the probate court held an evidentiary hearing on Jeffrey's bill of review and motion to set aside the probate of the 1981 will.  Jeffrey testified that he had repeatedly failed to honor court orders, was sanctioned by fines, and never paid any of the fines ordered by the court as sanctions.  Jeffrey further testified that he was present in court on September 27, 2004, for the sanctions hearing and heard that his pleadings had been struck.  Jeffrey provided deposition testimony consistent with his testimony offered at the hearing.  Transcripts of Jeffrey's depositions were admitted as exhibits.  The trial court also received several exhibits at the hearing, including, among other things, the application to probate the 1981 will, the application to probate the 1996 will, all of the

---

[3]Jeffrey testified at the bill of review hearing that his attorney, John Tinder, represented him up until September 27, 2004.  The record does show, however, that Jeffrey represented himself, pro se, at times during the lawsuit.

5

orders that Jeffrey admitted to violating, the ruling imposing costs, the earlier order striking Jeffrey's pleadings in 2001, and the various non-appearance affidavits. The trial court also took judicial notice of its entire file in this probate matter.

After hearing the evidence and arguments of counsel, the trial court denied Jeffrey's bill of review and the motion to set aside the probate of the 1981 will and taxed all costs against Jeffrey. This appeal ensued.

## II. Applicable Law and Standard of Review

Texas Probate Code section 31 provides,

> Any person interested may, by bill of review filed in the court in which the probate proceedings were had, have any decision, order, or judgment rendered by the court, or by the judge thereof, revised and corrected on showing error therein; . . . and no bill of review shall be filed after two years have elapsed from the date of such decision, order, or judgment.

TEX. PROBATE CODE ANN. § 31 (Vernon 2003).[4] "The purpose of a section 31 [statutory] bill of review is to revise and correct errors, not merely to set aside decisions, orders, or judgments rendered by the probate court." *Nadolney v. Taub*, 116 S.W.3d 273, 278 (Tex. App.–Houston [14th Dist.] 2003, pet. denied) (citing *Jackson v. Thompson*, 610 S.W.2d 519, 522 (Tex. Civ. App.–Houston [1st Dist.] 1980, no writ)). The error need not appear on the face of the record; but if it does not, appellant must specifically allege and prove substantial error by the trial court. *Id.* (citing *McDonald v. Carroll*, 783 S.W.2d 286, 288 (Tex. App.–Dallas 1989, writ denied)). "The fact of error may be proven on the trial." *McDonald*, 783 S.W.2d at 288.

---

[4]Jeffrey asserts that his statutory bill of review and motion to set aside the probate of the 1981 will was filed pursuant to probate code sections 31 and 93. *See* TEX. PROBATE CODE ANN. §§ 31, 93 (Vernon 2003). Although he refers to section 93 in his appellate brief, the arguments made on appeal, are section 31 bill of review challenges and not section 93 challenges to the validity of a will that has been admitted to probate. Accordingly, we will address Jeffrey's contentions as bill of review challenges. *See* TEX. R. APP. P. 47.1.

A statutory bill of review need not conform to the rules and is not limited by the restrictions of an equitable bill of review. *See id*. The ordinary diligence rules applicable to motions for new trial and to appeals from the complained-of judgment do not apply to statutory bills of review under section 31. *See id*.

In an appeal from the denial of a statutory bill of review, we must determine whether all elements of the statutory bill of review were established: whether (1) an interested person (2) filed a timely bill of review, and (3) showed substantial error. *See id*.; *see also* TEX. PROBATE CODE ANN. § 31. Jeffrey filed his statutory bill of review within two years of the probate court's order, and it is undisputed that Jeffrey is an interested party.[5] *See* TEX. PROBATE CODE ANN. § 31. Therefore, in this appeal, we must determine only whether Jeffrey proved the substantial error element of his statutory bill of review—that substantial error was committed by the probate court. *See id.*

Furthermore, there are two types of probate code section 31 cases, distinguished by the substantial error alleged. *See* 116 S.W.3d at 280-81. The first type of case is one in which the party seeking a bill of review alleges that the trial court committed substantial error when it acted in direct derogation of a specific, non-discretionary, provision of the probate code (type one). *See id.* The second type is a case in which the party alleges that the trial court committed substantial error in performing a discretionary act (type two). *See id.*; *compare Walker v. Sharpe*, 807 S.W.2d 448, 450-51 (Tex. App–Corpus Christi 1991, writ denied) (involving an order confirming the sale of property when the property was sold before the order issued authorizing the sale, contrary to probate code sections 331, 341-

---

[5]The Texas Supreme Court expressed the constituent elements of an interested person as follows: "[the interested person] must have a pecuniary [interest] held by him either as an individual or in a representative capacity which will be affected by the probate or defeat of the will." *Logan v. Thomason*, 146 Tex. 37, 202 S.W.2d 212, 215 (1947).

7

46, 353, and 355), *and McDonald*, 783 S.W.2d at 287 (involving the disproportionate distribution of the estate of intestate decedent, contrary to probate code section 45), *with Nadolney*, 116 S.W.3d at (involving the trial court's determination that the appointment of an appraiser was necessary, an act within the trial court's discretion).

## III.  Discussion

### A.  Substantial Error in Performing an Action in Direct Derogation of Probate Code Section 83(a)

In his second issue, Jeffrey contends that the trial court committed substantial error, in direct derogation of section 83(a) of the probate code, when it struck his pleadings before determining which of the two applications should have been admitted to probate. *See* TEX. PROBATE CODE ANN. § 83(a) (Vernon Supp. 2008).  Because his application to probate the 1996 will and Oscar's application to probate the 1981 were before the probate court and set for trial, Jeffrey asserts that the trial court should have considered both applications rather than imposing discovery sanctions.  He claims that the probate court is governed by section 83(a) and should have adhered to it.

By his arguments, Jeffrey appears to be asking this Court to conclude that this is a type one, section 31 probate case in which the party seeking a bill of review alleges that the trial court committed substantial error when it acted in direct derogation of a specific, non-discretionary, provision of the probate code.  *See Nadolney*, 116 S.W.3d at 280-81. We decline to do so.

Section 83(a) provides the following:

> If, after an application for the probate of a will . . . has been filed, and before such application has been heard, an application for the probate of a will of the decedent, not theretofore presented for probate is filed, the court shall hear both applications together and determine what instrument, if any should be admitted to probate, or whether the decedent died intestate.

8

TEX. PROBATE CODE ANN. § 83(a). While we agree that section 83(a) provides the procedural mechanism for hearing competing applications in one proceeding and controls the finality of a judgment when two competing will applications are pending, *see Estate of Gomez*, 161 S.W.3d 615, 616-17 (Tex. App.–San Antonio 2005, no pet.) (per curiam), to conclude that section 83(a) controls over the discovery rules would be to deny the probate court's authority to sanction discovery abuse.

"The Texas Rules of Civil Procedure govern proceedings in probate matters except in those instances in which a specific provision has been made to the contrary," *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812 (Tex. 1983) (citing TEX. R. CIV. P. 2), and in "will contests only to the extent they do not differ from the procedure established by the Probate Code." *In re Estate of Wilson*, 252 S.W.3d 708, 712 (Tex. App.–Texarkana 2008, no pet.) (quoting *Wojcik v. Wesolick*, 97 S.W.3d 335, 338 (Tex. App.–Houston [14th Dist.] 2003, no pet.) and citing *Bank of Tex., N.A., Trustee v. Mexia*, 135 S.W.3d 356, 362 (Tex. App.–Dallas 2004, pet. denied)). "Where the Probate Code is silent, the Texas Rules of Civil Procedure govern the procedures to be followed . . . ." *Coleson v. Bethan*, 931 S.W.2d 706, 712 (Tex. App.–Fort Worth 1996, no writ) (citing TEX. R. CIV. P. 2).

In this instance, we find no specific provision to the contrary in the probate code, and Jeffrey points us to none. Neither the probate code nor the rules of civil procedure contain language disavowing the applicability of discovery rules in general probate proceedings, in probate statutory bill of review proceedings, or in deference to rule 83(a). The legitimate purposes of discovery sanctions are to secure compliance with discovery rules, to deter other litigants from similar misconduct, and to punish violators. *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (per curiam). To conclude that rule 83(a) mandates that the trial court rule on two pending will applications and determine which will

9

should be admitted to probate despite discovery abuse on the part of an applicant would thwart the intended purposes of sanctions. *See id.* It would deprive the trial court of its ability to exercise the authority granted by rule 215 and would dilute the effectiveness of discovery rules in a probate proceeding where multiple wills have been filed—a result we are not willing to reach. *See* TEX. R. CIV. P. 215.

Therefore, we conclude that this is not a type one, section 31 probate case, a case controlled by section 83(a). Having so concluded, we do not reach Jeffrey's second issue or any portion of his first issue that could be construed as making the argument that section 83(a) controls in this case.[6] *See* TEX. R. APP. P. 47.1.

### B. Substantial Error in Performing a Discretionary Act Under Rule 215

By his first issue, Jeffrey contends that the evidence establishes that the probate court substantially erred in denying his statutory bill of review because it abused its discretion in granting a death penalty sanction when it dismissed his pleadings. This issue correctly identifies Jeffrey's case as a type two, section 31 probate case. *See Nadolney*, 116 S.W.3d at 280-81. The gravamen of Jeffrey's complaint, therefore, and the question before this Court, is whether Jeffrey, at the bill of review hearing, proved the third essential element of his statutory bill of review—whether he proved substantial error by the probate court when it struck his pleadings.

### 1. Relevant Law

Sanctioning parties for discovery abuse is within the discretion of the trial judge. *In re Zenergy, Inc.*, 968 S.W.2d 1, 9 (Tex. App.–Corpus Christi 1997, orig. proceeding); *see*

---

[6]For example, in his first issue, Jeffrey contends that it was error for the probate court to grant death penalty sanctions during the pending probate proceeding prior to the final determination as to which will should have been probated. He also contends in the first issue that the sanction was an abuse of discretion because the parties' applications were pending trial on the merits as mandated by section 83(a).

TEX. R. CIV. P. 215; *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding). Discovery sanctions will be set aside only for a clear abuse of discretion. *Am. Flood Research, Inc. v. Jones,* 192 S.W.3d 581, 583 (Tex. 2006) (per curiam); *Zenergy*, 968 S.W.2d at 9. Abuse of discretion occurs when the trial court acts without reference to any guiding rules and principles, *i.e.*, where the action was arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). "If the sanctions imposed are not just, a trial court abuses its discretion." *Zenergy*, 968 S.W.2d at 9 (citing *TransAmerican*, 811 S.W.2d at 917); *see* TEX. R. CIV. P. 215.2(b).

To determine whether discovery sanctions are just, the court applies a two-prong test. *Zenergy*, 968 S.W.2d at 9. The first prong requires that a direct relationship exists between the offensive conduct and the sanction imposed. *Id.* "[T]he sanction must be directed against the abuse and toward remedying the prejudice caused an innocent party." *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 850 (Tex. 1992) (orig. proceeding). Under this prong, the trial court should attempt to determine if the offensive conduct is attributable to the attorney, the party, or both. *Zenergy*, 968 S.W.2d at 9. The second prong requires that the sanctions "fit the crime"; in other words, they should not be excessive. *Id.* "Sanctions which are so severe that they preclude presentation on the merits should not be assessed absent a party's bad faith or counsel's flagrant disregard for the responsibilities of discovery under the rules." *Id.* (citing *Chrysler Corp.*, 841 S.W.2d at 849). Such sanctions should not be assessed unless the party's obstruction of the discovery process justifies the presumption that the claim or defense lacks merit. *Id.* Even then, lesser sanctions should be tested first to determine if they are adequate to secure compliance, deterrence, and punishment of the offender. *Id.*

11

In determining whether to impose death penalty sanctions, the trial court is not limited to considering only the specific violation for which sanctions are finally imposed, but may consider everything that has occurred during the history of the litigation. *Allied Res. Corp. v. Mo-Vac Serv. Co., Inc.*, 871 S.W.2d 773, 775 (Tex. App.–Corpus Christi 1994, writ denied); *see Schmitt v. Bordelon*, 844 S.W.2d 273, 278 (Tex. App.–Fort Worth 1992, writ denied) (citing *Braden v. S. Main Bank*, 837 S.W.2d 733, 737 (Tex. App.–Houston [14th Dist.] 1992, writ denied) (concluding that the trial court may consider action taken in another court when that action is relevant to the case pending before the trial court)). In reviewing an order imposing sanctions, we must independently review the entire record and are not bound by the trial court's findings of fact and conclusions of law, if any. *Am. Flood Research*, 192 S.W3.d at 583.

### 2. Direct Relationship

Under the direct relationship prong, Jeffrey appears to be arguing that the evidence at the bill of review hearing established substantial error because the sanction was not properly directed against the abuse, if any, attributable to him. *See Chrysler Corp.*, 841 S.W.2d at 850; *Zenergy*, 968 S.W.2d at 9. We disagree.

### a. Sanctions Alleged to Have Been Directed Against Lillian's Estate

First, Jeffrey generally contends that the evidence established that the probate court committed substantial error when it dismissed a pleading of the estate—therefore sanctioning the estate, not Jeffrey. However, this contention has no basis. The probate court did not dismiss a pleading of the estate. Rather, the probate court dismissed pleadings filed by Jeffrey. Moreover, the probate court could not have dismissed a pleading of the estate because it is not a legal entity and may not properly sue or be sued

12

as such. *See Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex. 1975). This argument fails.

Jeffrey also asserts that, if the sanction against him was justified, the probate court should have imposed some form of sanction directly against him, individually. He suggests, for example, that the probate court could have removed him as the party applicant and/or as the potential executor of the estate. By dismissing his pleadings, Jeffrey contends, the probate court committed substantial error by preventing him from attempting to probate the last will of his grandmother. He urges that this action, in effect, punished the estate and was arbitrary and unreasonable because there was no direct relationship between the sanction and the estate. *See Mayer*, 104 S.W.3d at 882.

Oscar argues that this premise is flawed, and we agree. As set out above, the probate court never purported to sanction the estate. The order is clear. The probate court ordered that all pleadings filed by Jeffrey be stricken. The pleadings included Jeffrey's application to probate the 1996 will, his application to remove the administrator and appoint a successor executor, his petition for accounting, his motion to release funds, and his written answer. In none of those pleadings, did Jeffrey appear on behalf of the estate; Jeffrey appeared as a person "interested" in the estate. Therefore, in striking his pleadings, the probate court sanctioned Jeffrey individually.

b. Direct Relationship Between Jeffrey's Conduct and the Sanction Imposed

Jeffrey further contends that the death penalty sanction in this case was not appropriate because the evidence established that there was no direct relationship between the sanction and his conduct. Jeffrey claims that the only conduct for which he was sanctioned was his failure to attend a hearing for which he had no notice and at which he was assessed a $5,000 security deposit for costs. Again, we disagree because, in

13

determining whether to impose death penalty sanctions, the probate court was not limited to considering only the specific violation for which the sanction was finally imposed. *See Allied Res.*, 871 S.W.2d at 775.

It is clear that the probate court considered everything that occurred during the history of the litigation. *Id.* The record demonstrates that the probate court imposed death penalty sanctions only after Jeffrey repeatedly violated the discovery rules and the probate court's orders. The evidence at the hearing established that Jeffrey failed to appear for properly noticed depositions three times, two of which were ordered by the court. In addition, Jeffrey failed to provide a sworn accounting as ordered by the probate court, failed to pay fees the probate court ordered him to pay, and failed to appear to give testimony on Oscar's motion to rule on costs as ordered. There was also evidence that the probate court struck Jeffrey's earlier pleadings. The evidence did not establish that the trial court imposed death penalty sanctions solely because Jeffrey failed to attend one hearing. In addition, the probate court's August 21, 2001 order striking Jeffrey's pleadings states that the court reviewed the earlier motions for sanctions and responses and considered arguments of counsel. It also sets out that the probate court had given Jeffrey fair warning that his failure to comply with the court's order of July 18, 2001 order would result in the striking of his pleadings.

Based on the evidence set out above and the trial court's sanction order that was admitted into evidence at the bill of review hearing, a direct relationship was shown between the sanction and the offensive conduct, and the offensive conduct was shown to be attributable to Jeffrey. It was established that the sanctions were directly related not only to Jeffrey's failure to attend one hearing, but also to other repeated violations—violations the probate court determined were attributable to Jeffrey. *See*

14

*Chrysler Corp.*, 841 S.W.2d at 850. Jeffrey failed to prove substantial error in this regard; the evidence establishes otherwise.

### 3. Excessive Sanctions

Under the excessive sanction prong, we construe Jeffrey's argument as complaining that he proved that the probate court committed substantial error when it imposed excessive sanctions. Jeffrey contends that death penalty sanctions should have not been assessed because his claim had merit. *See Zenergy*, 968 S.W.2d at 9. He also asserts that lesser sanctions should have been imposed before the probate court struck his pleadings. *See id.*

### a. Presumption that Jeffrey's Claim Lacked Merit

Jeffrey first contends that the sanction was excessive because his actions did not justify the presumption that the claim lacked merit. *See Zenergy*, 968 S.W.2d at 9. Jeffrey contends that the probate court knew the trial on the merits was only one week away and that his case had merit because his application to probate his grandmother's 1996 will, a will that allegedly revoked the 1981 will, was pending. Jeffrey claims that, in most cases, the imposition of sanctions should never prevent a decision on the merits of the case.

We do not agree with Jeffrey's contention that, in most cases, sanctions should never prevent a decision on the merits. We do, however, agree that severe sanctions that preclude presentation on the merits should not be assessed unless the party's obstruction of the discovery process justifies the presumption that the claim lacks merit. *See id.* And, in this case, the evidence established that Jeffrey's behavior justified the presumption that the merits of his case were suspect—that his case lacked merit.

In contrast to Oscar's application seeking to probate a 1981 will that left everything to Lillian's three sons if her husband predeceased her with a codicil appointing Oscar as

15

independent executor, Jeffrey's application sought the probate of a 1996 will that left everything to Jeffrey and appointed him executor. From 1989 to 1997, Lillian lived with Jeffrey. During this time, Lillian allegedly executed the 1996 will that revoked the 1981 will. In addition, Jeffrey testified at his deposition that he withdrew over $800,000 in stock from a Merrill Lynch joint account that Lillian allegedly opened with Jeffrey on May 2, 1997. Despite being ordered to do so by the probate court, Jeffrey refused to account for money he withdrew for a three-year period from the date Oscar was appointed Lillian's temporary guardian on December 18, 1997.

Furthermore, the record includes a July 28, 1999 affidavit of Lillian's treating physician, A. Lee Guinn, Jr., M.D.[7] In this affidavit, Dr. Guinn attested that Lillian had been his patient periodically since 1990. Dr. Guinn stated that he examined Lillian on June 10, 1996, to determine whether a guardianship would be appropriate. Based on that examination, it was Dr. Guinn's opinion that Lillian "was incapable of personally handling or making the decision concerning a bank account or financial matters" and that she was not mentally competent "to contract." Because of her advancing years and a progressive brain disorder, it was his opinion that "[Lillian's] mental capacity would have remained the same after June 10, 1996, or [would have] become progressively worse." Dr. Quinn concluded with the following: "Therefore, I am of the opinion that Lillian M. Buck would not have had the mental capacity or competence to enter into a contract with Merrill Lynch, Pierce, Fenner & Smith, Incorporated on May 2, 1997, to open a joint account with her grandson, Jeffrey A. Buck."

---

[7]At the bill of review hearing, the probate court took judicial notice of its entire file. The affidavit of A. Lee Guinn, Jr., M.D., was attached to Oscar's response to Jeffrey's motion for summary judgment.

16

In addition, Jeffrey's repeated failures to comply with the trial court's orders and with the discovery rules justifies the presumption that the merits of his case were suspect—that his application to probate the 1996 will lacked merit. Certainly, Jeffrey engaged in an extensive course of discovery abuse. Had Jeffrey not delayed the process through his discovery abuse, the claims made by both parties would have been facilitated. Because of Jeffrey's actions, the probate court could have presumed Jeffrey's application, as well as his other pleadings, lacked merit.

Jeffrey was also the applicant who filed the 1996 will for probate. Based on that filing, the probate court could have presumed that Jeffrey would be willing to establish the validity of the 1996 will through his testimony and to account for his withdrawal of funds if his claims had merit. Without such co-operation, the trial court was left with no other conclusion than that Jeffrey's claim lacked merit. Therefore, Jeffrey did not prove that the sanctions were excessive because his claim had merit, and no substantial error was shown.

### b. Lesser Sanctions

Jeffrey also argues that less severe sanctions were available and should have been considered before the probate court struck his pleadings. He contends that, subsequent to his filing his application to probate the 1996 will, he had not been sanctioned; rather the probate court had only imposed different costs, including an assessment of a $5,000 security cost at the hearing he failed to attend. Jeffrey contends that his behavior was not so egregious as to alleviate the probate court of its burden to use a lesser sanction rather than to dismiss his application. We disagree with Jeffrey's assertions.

There were numerous instances of discovery abuse for which the probate court tailored lesser sanctions in an effort to rectify the abuse, including those Jeffrey describes

17

above as non-sanctions. In violation of court orders, Jeffrey failed to appear for depositions; failed to provide a sworn accounting; failed to pay fees; and failed to appear to give testimony on Oscar's motion to rule on costs.

The probate court is not required to impose every possible less severe sanction before striking a party's pleadings. *See TransAmerican*, 811 S.W.2d at 917. In this case, the probate court not only considered less severe sanctions, the record reflects that it imposed lesser sanctions before dismissing his application in an effort to secure compliance. *Id.* Knowing that sanctions were imminent, Jeffrey continued to disregard the probate court's orders. The probate court was also familiar with the history of this litigation. At the bill of review hearing the probate judge stated:

> I think the record will show that as of May the 31st, 1985 when this Court was established that [sic] I have never sanctioned anybody, never, until this occasion. And I have never seen a proceeding in this court that was in such disarray and so uncooperative as this was to that very point. . . . I've never sanctioned anyone except this case, and the reason it evolved was the terrible nature of this experience for the Court and for the parties. It was - it was quite an interesting case not from the standpoint of being adversarial but from the part of your client [Jeffrey] and his brother [James] for what went on before this up to this point [sic]. It was really quite tough.

Clearly the evidence establishes that the lesser sanctions imposed over the course of the proceedings were inadequate. The discovery abuse continued through the second phase of the proceedings—when Jeffrey filed a new application to probate the 1996 will—after the probate court had stricken Jeffrey's earlier pleadings. After imposing lesser sanctions, the probate court finally issued the death penalty sanction order being challenged by Jeffrey's bill of review. Thus, Jeffrey did not prove that the sanctions were excessive because lesser sanctions were not considered and, again, no substantial error is shown.

## 4. Notice

Finally, in his first issue, Jeffrey appears to be arguing that he proved substantial error by the probate court in striking his pleadings because the he lacked notice of the sanction hearings. We disagree.

The record reflects Jeffrey did not appear at the September 10 sanctions hearing on Oscar's motion for costs. At the bill of review hearing, Jeffrey testified that he did not appear on September 10 because he had not been provided notice of the hearing by his attorney; that he "had a falling out with [his counsel]"; and that "[t]here was a failure to communicate." Nonetheless, based on his testimony, Jeffrey's attorney apparently had notice of the September 10 hearing, and it is undisputed that his attorney had notice of the September 22 sanction hearing. Therefore, we conclude that Jeffrey received notice of these sanction hearings because "[n]otice to an attorney, acquired during the existence of the attorney-client relationship, is imputed to the client." *Allied Res.*, 871 S.W.2d at 778.

Furthermore, even though the final sanction hearing did not take place until September 27, it is also undisputed that Jeffrey was present in the court room at the time of that hearing. In addition, while Jeffrey's attorney requested leave of court to withdraw his representation during the hearing, Jeffrey had already effectively been notified of the hearing through his attorney's notification, which is undisputed. *See id.* Thus, substantial error has not been proven on the basis of lack of notice, and Jeffrey's argument fails.

After hearing the evidence, considering the record, and recalling the entire history of the litigation, the probate court could have properly determined that notice was given and that the death penalty sanction was justified in this case. Jeffrey did not prove that he lacked notice of the sanction hearings. He did not prove that there was not a direct relationship between his conduct and the sanction imposed or that the sanction was

19

excessive. Given Jeffrey's burden of proof in the probate court, the discretionary nature of the act Jeffrey challenged, and the record before this court, we conclude that Jeffrey failed to establish that the probate court made a substantial error in striking his pleadings, and, thus, Jeffrey failed to prove all of the essential elements of his statutory bill of review. *See* TEX. PROBATE CODE § 31.  We overrule Jeffrey's first issue.

IV. Conclusion

We affirm.

NELDA V. RODRIGUEZ
Justice

Opinion delivered and filed
this 28th day of May, 2009.