NUMBER 13-07-00292-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


JEFFREY BUCK, Appellant,


v.
 


ESTATE OF LILLIAN M. BUCK AND OSCAR A. BUCK,

ADMINISTRATOR AND INDEPENDENT EXECUTOR 

OF THE ESTATE OF LILLIAN M. BUCK, DECEASED, Appellee.

 


On appeal from the County Court at Law No. 4 


of Nueces County, Texas.


 


O P I N I O N



Before Justices Yañez, Rodriguez, and Benavides 


Opinion by Justice Rodriguez



 This is an appeal from the denial of a statutory bill of review filed to set aside a
death penalty sanction in a probate case. (1) By two issues, appellant Jeffrey Buck, grandson
of the late Lillian M. Buck and son of appellee Oscar A. Buck, contends that the statutory
bill of review was proper to correct substantial errors committed by the probate court when
it struck his pleadings which included, among other things, his application to probate a
1996 will allegedly executed by his grandmother. We affirm.

I. Background

 The present suit concerns proceedings that occurred during the probate of the
estate of Lillian M. Buck. In 1981, Lillian executed a will leaving her estate to her husband
and, if he was not living at the time of her death, to her three sons. This was followed by
a first codicil in 1985, which appointed Oscar independent executor.

 From 1989 to 1997, Lillian lived with Jeffrey. In 1996, Lillian allegedly executed
another will revoking her earlier one. The 1996 will left everything to Jeffrey.

 In March 2001, Lillian died, and in April 2001, Oscar applied to the probate court to
be appointed administrator of his mother's estate. A few weeks later, Jeffrey filed an
application for probate of the 1996 will and for issuance of letters testamentary. In
response, Oscar filed an opposition, alleging numerous challenges to the validity of the
1996 will. In May 2001, the probate court appointed Oscar temporary administrator. This
appointment was unopposed by agreement of the parties.

 After Oscar filed his first motion for sanctions because of Jeffrey's failure to appear
at his scheduled deposition, the parties agreed that no hearing would go forward because
they had reached an agreement to reschedule Jeffrey's deposition. However, after Jeffrey
did not appear at his deposition a second time, Oscar filed a second motion for sanctions
asking the probate court to declare the 1996 will invalid, strike Jeffrey's pleadings, order
Jeffrey to pay Oscar's attorney's fees, and appoint Oscar permanent administrator. The
probate court granted the motion for sanctions, in part, ordering Jeffrey to appear for his
deposition on a date certain and to pay Oscar $600 in attorney's fees no later than that
same date.

 After Jeffrey failed to appear for his deposition a third time and did not pay the $600
in fees, Oscar filed a third motion for sanctions asking the probate court to declare the
1996 will invalid, strike Jeffrey's pleadings, and order Jeffrey to pay additional fees. Again,
the probate court granted the motion, in part, ordering Jeffrey to appear for his deposition
on a specific date and to pay additional fees. The court also warned Jeffrey that if he failed
to abide by the order, it would strike his pleadings.

 After the probate court entered this order, Jeffrey appeared for his scheduled
deposition but did not pay Oscar's attorney's fees. Through his deposition testimony,
Oscar discovered that Jeffrey had used or caused to be transferred from his grandmother's
Merrill Lynch account some $800,000 in stock and that all the proceeds had been spent
or lost. (2) Based on this testimony, Oscar filed his fourth motion for sanctions asking the
court to strike Jeffrey's pleadings. The probate court did not strike Jeffrey's pleadings but
did order that the previous amounts of money the court had ordered Jeffrey to pay be
reduced to judgment and that by August 9, 2001, Jeffrey was to provide Oscar with a
sworn accounting showing use of all assets drawn from the Merrill Lynch account for a
three-year period beginning December 18, 1997.

 Jeffrey failed to provide the sworn accounting, and on August 15, 2001, Oscar filed
his fifth motion for sanctions requesting that the trial court strike Jeffrey's pleadings. 
Following a hearing on August 21, 2001, the probate court issued an order striking all
pleadings filed by Jeffrey. The court also appointed Oscar permanent administrator.

 In September 2003, Jeffrey again filed an application to probate the 1996 will, which
designated him as the executor and the only devisee of Lillian's estate. Jeffrey also
requested the removal of Oscar as administrator and petitioned for an accounting. Oscar
contested everything and noticed Jeffrey for his deposition. When Jeffrey failed to appear
for this deposition, Oscar again filed a motion for sanctions, asking that Jeffrey's new
pleadings be stricken and that Jeffrey be ordered to pay attorney's fees.

 In April 2004, Oscar filed an application to probate the 1981 will. He also filed a
motion to rule on costs. See Tex. R. Civ. P. 143 (providing that the trial court may order
a party to give security to cover accrued costs of the trial, and if the party does not file the
security, the court may dismiss the suit). The probate court ordered Jeffrey to appear at
a September 10, 2004 hearing on Oscar's motion for costs. When Jeffrey did not appear
at the hearing, the probate court ordered him to pay security for costs in the amount of
$5,000 on or before October 5, 2004, and if he did not pay, all of his claims "shall be
denied and dismissed."

 On September 16, 2004, Oscar again moved for sanctions, this time for Jeffrey's
failure to appear at the September 10, 2004 hearing. In this motion, Oscar asked the
probate court to strike Jeffrey's pleadings and order him to pay an additional $750 in
attorney's fees. The hearing on this motion was set for September 22, 2004. Notice of the
hearing was served on Jeffrey's attorney of record. The actual hearing took place on
September 27, and it is undisputed that Jeffrey appeared and was in court for that hearing,
although his attorney was not. At the September 27 hearing, the probate court struck
Jeffrey's pleadings. (3) The probate court also ordered Jeffrey to pay $750 to Oscar. In
addition, the probate court set Oscar's application to probate the 1981 will for hearing, and
on September 28, 2004, the court admitted the 1981 will to probate.

 On September 28, 2006, Jeffrey filed a bill of review seeking to set aside the
sanctions order entered on September 27. Appellant alleged, in part, that the death
penalty sanction dismissing his application to probate the 1996 will was an abuse of
discretion because it was issued without proper notice to Jeffrey and without any evidence
offered at the hearing to support the sanction. Jeffrey also contended by his bill of review
that the record reflected that on September 27, 2004, both Jeffrey and Oscar had pending
respective applications to probate wills set for trial on the merits on October 4, 2004, and
that it was substantial error for the probate court not to hear both applications and
determine which instrument should be admitted to probate.

 On April 4, 2007, the probate court held an evidentiary hearing on Jeffrey's bill of
review and motion to set aside the probate of the 1981 will. Jeffrey testified that he had
repeatedly failed to honor court orders, was sanctioned by fines, and never paid any of the
fines ordered by the court as sanctions. Jeffrey further testified that he was present in
court on September 27, 2004, for the sanctions hearing and heard that his pleadings had
been struck. Jeffrey provided deposition testimony consistent with his testimony offered
at the hearing. Transcripts of Jeffrey's depositions were admitted as exhibits. The trial
court also received several exhibits at the hearing, including, among other things, the
application to probate the 1981 will, the application to probate the 1996 will, all of the
orders that Jeffrey admitted to violating, the ruling imposing costs, the earlier order striking
Jeffrey's pleadings in 2001, and the various non-appearance affidavits. The trial court also
took judicial notice of its entire file in this probate matter.

 After hearing the evidence and arguments of counsel, the trial court denied Jeffrey's
bill of review and the motion to set aside the probate of the 1981 will and taxed all costs
against Jeffrey. This appeal ensued.

II. Applicable Law and Standard of Review

 Texas Probate Code section 31 provides,

 Any person interested may, by bill of review filed in the court in which the
probate proceedings were had, have any decision, order, or judgment
rendered by the court, or by the judge thereof, revised and corrected on
showing error therein; . . . and no bill of review shall be filed after two years
have elapsed from the date of such decision, order, or judgment.


Tex. Probate Code Ann. § 31 (Vernon 2003). (4) "The purpose of a section 31 [statutory] bill
of review is to revise and correct errors, not merely to set aside decisions, orders, or
judgments rendered by the probate court." Nadolney v. Taub, 116 S.W.3d 273, 278 (Tex.
App.-Houston [14th Dist.] 2003, pet. denied) (citing Jackson v. Thompson, 610 S.W.2d
519, 522 (Tex. Civ. App.-Houston [1st Dist.] 1980, no writ)). The error need not appear
on the face of the record; but if it does not, appellant must specifically allege and prove
substantial error by the trial court. Id. (citing McDonald v. Carroll, 783 S.W.2d 286, 288
(Tex. App.-Dallas 1989, writ denied)). "The fact of error may be proven on the trial." 
McDonald, 783 S.W.2d at 288.

 A statutory bill of review need not conform to the rules and is not limited by the
restrictions of an equitable bill of review. See id. The ordinary diligence rules applicable
to motions for new trial and to appeals from the complained-of judgment do not apply to
statutory bills of review under section 31. See id.

 In an appeal from the denial of a statutory bill of review, we must determine whether
all elements of the statutory bill of review were established: whether (1) an interested
person (2) filed a timely bill of review, and (3) showed substantial error. See id.; see also
Tex. Probate Code Ann. § 31. Jeffrey filed his statutory bill of review within two years of
the probate court's order, and it is undisputed that Jeffrey is an interested party. (5) See Tex.
Probate Code Ann. § 31. Therefore, in this appeal, we must determine only whether
Jeffrey proved the substantial error element of his statutory bill of review--that substantial
error was committed by the probate court. See id.

 Furthermore, there are two types of probate code section 31 cases, distinguished
by the substantial error alleged. See 116 S.W.3d at 280-81. The first type of case is one
in which the party seeking a bill of review alleges that the trial court committed substantial
error when it acted in direct derogation of a specific, non-discretionary, provision of the
probate code (type one). See id. The second type is a case in which the party alleges that
the trial court committed substantial error in performing a discretionary act (type two). See
id.; compare Walker v. Sharpe, 807 S.W.2d 448, 450-51 (Tex. App-Corpus Christi 1991,
writ denied) (involving an order confirming the sale of property when the property was sold
before the order issued authorizing the sale, contrary to probate code sections 331, 341-46, 353, and 355), and McDonald, 783 S.W.2d at 287 (involving the disproportionate
distribution of the estate of intestate decedent, contrary to probate code section 45), with
Nadolney, 116 S.W.3d at (involving the trial court's determination that the appointment of
an appraiser was necessary, an act within the trial court's discretion).

III. Discussion


A. Substantial Error in Performing an Action

in Direct Derogation of Probate Code Section 83(a)


 In his second issue, Jeffrey contends that the trial court committed substantial error,
in direct derogation of section 83(a) of the probate code, when it struck his pleadings
before determining which of the two applications should have been admitted to probate. 
See Tex. Probate Code Ann. § 83(a) (Vernon Supp. 2008). Because his application to
probate the 1996 will and Oscar's application to probate the 1981 were before the probate
court and set for trial, Jeffrey asserts that the trial court should have considered both
applications rather than imposing discovery sanctions. He claims that the probate court
is governed by section 83(a) and should have adhered to it.

 By his arguments, Jeffrey appears to be asking this Court to conclude that this is a
type one, section 31 probate case in which the party seeking a bill of review alleges that
the trial court committed substantial error when it acted in direct derogation of a specific,
non-discretionary, provision of the probate code. See Nadolney, 116 S.W.3d at 280-81. 
We decline to do so.

 Section 83(a) provides the following:

 If, after an application for the probate of a will . . . has been filed, and before
such application has been heard, an application for the probate of a will of
the decedent, not theretofore presented for probate is filed, the court shall
hear both applications together and determine what instrument, if any should
be admitted to probate, or whether the decedent died intestate.


Tex. Probate Code Ann. § 83(a). While we agree that section 83(a) provides the
procedural mechanism for hearing competing applications in one proceeding and controls
the finality of a judgment when two competing will applications are pending, see Estate of
Gomez, 161 S.W.3d 615, 616-17 (Tex. App.-San Antonio 2005, no pet.) (per curiam), to
conclude that section 83(a) controls over the discovery rules would be to deny the probate
court's authority to sanction discovery abuse.

 "The Texas Rules of Civil Procedure govern proceedings in probate matters except
in those instances in which a specific provision has been made to the contrary,"
Cunningham v. Parkdale Bank, 660 S.W.2d 810, 812 (Tex. 1983) (citing Tex. R. Civ. P. 2),
and in "will contests only to the extent they do not differ from the procedure established by
the Probate Code." In re Estate of Wilson, 252 S.W.3d 708, 712 (Tex. App.-Texarkana
2008, no pet.) (quoting Wojcik v. Wesolick, 97 S.W.3d 335, 338 (Tex. App.-Houston [14th
Dist.] 2003, no pet.) and citing Bank of Tex., N.A., Trustee v. Mexia, 135 S.W.3d 356, 362
(Tex. App.-Dallas 2004, pet. denied)). "Where the Probate Code is silent, the Texas Rules
of Civil Procedure govern the procedures to be followed . . . ." Coleson v. Bethan, 931
S.W.2d 706, 712 (Tex. App.-Fort Worth 1996, no writ) (citing Tex. R. Civ. P. 2).

 In this instance, we find no specific provision to the contrary in the probate code,
and Jeffrey points us to none. Neither the probate code nor the rules of civil procedure
contain language disavowing the applicability of discovery rules in general probate
proceedings, in probate statutory bill of review proceedings, or in deference to rule 83(a). 
The legitimate purposes of discovery sanctions are to secure compliance with discovery
rules, to deter other litigants from similar misconduct, and to punish violators. Spohn Hosp.
v. Mayer, 104 S.W.3d 878, 882 (Tex. 2003) (per curiam). To conclude that rule 83(a)
mandates that the trial court rule on two pending will applications and determine which will
should be admitted to probate despite discovery abuse on the part of an applicant would
thwart the intended purposes of sanctions. See id. It would deprive the trial court of its
ability to exercise the authority granted by rule 215 and would dilute the effectiveness of
discovery rules in a probate proceeding where multiple wills have been filed--a result we
are not willing to reach. See Tex. R. Civ. P. 215.

 Therefore, we conclude that this is not a type one, section 31 probate case, a case
controlled by section 83(a). Having so concluded, we do not reach Jeffrey's second issue
or any portion of his first issue that could be construed as making the argument that
section 83(a) controls in this case. (6) See Tex. R. App. P. 47.1.

B. Substantial Error in Performing a Discretionary Act Under Rule 215

 By his first issue, Jeffrey contends that the evidence establishes that the probate
court substantially erred in denying his statutory bill of review because it abused its
discretion in granting a death penalty sanction when it dismissed his pleadings. This issue
correctly identifies Jeffrey's case as a type two, section 31 probate case. See Nadolney,
116 S.W.3d at 280-81. The gravamen of Jeffrey's complaint, therefore, and the question
before this Court, is whether Jeffrey, at the bill of review hearing, proved the third essential
element of his statutory bill of review--whether he proved substantial error by the probate
court when it struck his pleadings.

1. Relevant Law

 Sanctioning parties for discovery abuse is within the discretion of the trial judge. In
re Zenergy, Inc., 968 S.W.2d 1, 9 (Tex. App.-Corpus Christi 1997, orig. proceeding); see
Tex. R. Civ. P. 215; TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917
(Tex. 1991) (orig. proceeding). Discovery sanctions will be set aside only for a clear abuse
of discretion. Am. Flood Research, Inc. v. Jones, 192 S.W.3d 581, 583 (Tex. 2006) (per
curiam); Zenergy, 968 S.W.2d at 9. Abuse of discretion occurs when the trial court acts
without reference to any guiding rules and principles, i.e., where the action was arbitrary
and unreasonable. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985). "If the sanctions imposed are not just, a trial court abuses its discretion." Zenergy,
968 S.W.2d at 9 (citing TransAmerican, 811 S.W.2d at 917); see Tex. R. Civ. P. 215.2(b).

 To determine whether discovery sanctions are just, the court applies a two-prong
test. Zenergy, 968 S.W.2d at 9. The first prong requires that a direct relationship exists
between the offensive conduct and the sanction imposed. Id. "[T]he sanction must be
directed against the abuse and toward remedying the prejudice caused an innocent party." 
Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 850 (Tex. 1992) (orig. proceeding). Under
this prong, the trial court should attempt to determine if the offensive conduct is attributable
to the attorney, the party, or both. Zenergy, 968 S.W.2d at 9. The second prong requires
that the sanctions "fit the crime"; in other words, they should not be excessive. Id. 
"Sanctions which are so severe that they preclude presentation on the merits should not
be assessed absent a party's bad faith or counsel's flagrant disregard for the
responsibilities of discovery under the rules." Id. (citing Chrysler Corp., 841 S.W.2d at
849). Such sanctions should not be assessed unless the party's obstruction of the
discovery process justifies the presumption that the claim or defense lacks merit. Id. Even
then, lesser sanctions should be tested first to determine if they are adequate to secure
compliance, deterrence, and punishment of the offender. Id.

 In determining whether to impose death penalty sanctions, the trial court is not
limited to considering only the specific violation for which sanctions are finally imposed, but
may consider everything that has occurred during the history of the litigation. Allied Res.
Corp. v. Mo-Vac Serv. Co., Inc., 871 S.W.2d 773, 775 (Tex. App.-Corpus Christi 1994, writ
denied); see Schmitt v. Bordelon, 844 S.W.2d 273, 278 (Tex. App.-Fort Worth 1992, writ
denied) (citing Braden v. S. Main Bank, 837 S.W.2d 733, 737 (Tex. App.-Houston [14th
Dist.] 1992, writ denied) (concluding that the trial court may consider action taken in
another court when that action is relevant to the case pending before the trial court)). In
reviewing an order imposing sanctions, we must independently review the entire record
and are not bound by the trial court's findings of fact and conclusions of law, if any. Am.
Flood Research, 192 S.W3.d at 583.

2. Direct Relationship


 Under the direct relationship prong, Jeffrey appears to be arguing that the evidence
at the bill of review hearing established substantial error because the sanction was not
properly directed against the abuse, if any, attributable to him. See Chrysler Corp., 841
S.W.2d at 850; Zenergy, 968 S.W.2d at 9. We disagree.

a. Sanctions Alleged to Have Been Directed Against Lillian's Estate

 First, Jeffrey generally contends that the evidence established that the probate court
committed substantial error when it dismissed a pleading of the estate--therefore
sanctioning the estate, not Jeffrey. However, this contention has no basis. The probate
court did not dismiss a pleading of the estate. Rather, the probate court dismissed
pleadings filed by Jeffrey. Moreover, the probate court could not have dismissed a
pleading of the estate because it is not a legal entity and may not properly sue or be sued
as such. See Price v. Estate of Anderson, 522 S.W.2d 690, 691 (Tex. 1975). This
argument fails.

 Jeffrey also asserts that, if the sanction against him was justified, the probate court
should have imposed some form of sanction directly against him, individually. He
suggests, for example, that the probate court could have removed him as the party
applicant and/or as the potential executor of the estate. By dismissing his pleadings,
Jeffrey contends, the probate court committed substantial error by preventing him from
attempting to probate the last will of his grandmother. He urges that this action, in effect,
punished the estate and was arbitrary and unreasonable because there was no direct
relationship between the sanction and the estate. See Mayer, 104 S.W.3d at 882.

 Oscar argues that this premise is flawed, and we agree. As set out above, the
probate court never purported to sanction the estate. The order is clear. The probate
court ordered that all pleadings filed by Jeffrey be stricken. The pleadings included
Jeffrey's application to probate the 1996 will, his application to remove the administrator
and appoint a successor executor, his petition for accounting, his motion to release funds,
and his written answer. In none of those pleadings, did Jeffrey appear on behalf of the
estate; Jeffrey appeared as a person "interested" in the estate. Therefore, in striking his
pleadings, the probate court sanctioned Jeffrey individually.

b. Direct Relationship Between Jeffrey's Conduct and the Sanction Imposed

 Jeffrey further contends that the death penalty sanction in this case was not
appropriate because the evidence established that there was no direct relationship
between the sanction and his conduct. Jeffrey claims that the only conduct for which he
was sanctioned was his failure to attend a hearing for which he had no notice and at which
he was assessed a $5,000 security deposit for costs. Again, we disagree because, in
determining whether to impose death penalty sanctions, the probate court was not limited
to considering only the specific violation for which the sanction was finally imposed. See
Allied Res., 871 S.W.2d at 775.

 It is clear that the probate court considered everything that occurred during the
history of the litigation. Id. The record demonstrates that the probate court imposed death
penalty sanctions only after Jeffrey repeatedly violated the discovery rules and the probate
court's orders. The evidence at the hearing established that Jeffrey failed to appear for
properly noticed depositions three times, two of which were ordered by the court. In
addition, Jeffrey failed to provide a sworn accounting as ordered by the probate court,
failed to pay fees the probate court ordered him to pay, and failed to appear to give
testimony on Oscar's motion to rule on costs as ordered. There was also evidence that the
probate court struck Jeffrey's earlier pleadings. The evidence did not establish that the trial
court imposed death penalty sanctions solely because Jeffrey failed to attend one hearing. 
In addition, the probate court's August 21, 2001 order striking Jeffrey's pleadings states
that the court reviewed the earlier motions for sanctions and responses and considered
arguments of counsel. It also sets out that the probate court had given Jeffrey fair warning
that his failure to comply with the court's order of July 18, 2001 order would result in the
striking of his pleadings.

 Based on the evidence set out above and the trial court's sanction order that was
admitted into evidence at the bill of review hearing, a direct relationship was shown
between the sanction and the offensive conduct, and the offensive conduct was shown to
be attributable to Jeffrey. It was established that the sanctions were directly related not
only to Jeffrey's failure to attend one hearing, but also to other repeated
violations--violations the probate court determined were attributable to Jeffrey. See
Chrysler Corp., 841 S.W.2d at 850. Jeffrey failed to prove substantial error in this regard;
the evidence establishes otherwise.

3. Excessive Sanctions Under the excessive sanction prong, we construe Jeffrey's argument as complaining
that he proved that the probate court committed substantial error when it imposed
excessive sanctions. Jeffrey contends that death penalty sanctions should have not been
assessed because his claim had merit. See Zenergy, 968 S.W.2d at 9. He also asserts
that lesser sanctions should have been imposed before the probate court struck his
pleadings. See id.

a. Presumption that Jeffrey's Claim Lacked Merit

 Jeffrey first contends that the sanction was excessive because his actions did not
justify the presumption that the claim lacked merit. See Zenergy, 968 S.W.2d at 9. Jeffrey
contends that the probate court knew the trial on the merits was only one week away and
that his case had merit because his application to probate his grandmother's 1996 will, a
will that allegedly revoked the 1981 will, was pending. Jeffrey claims that, in most cases,
the imposition of sanctions should never prevent a decision on the merits of the case.

 We do not agree with Jeffrey's contention that, in most cases, sanctions should
never prevent a decision on the merits. We do, however, agree that severe sanctions that
preclude presentation on the merits should not be assessed unless the party's obstruction
of the discovery process justifies the presumption that the claim lacks merit. See id. And,
in this case, the evidence established that Jeffrey's behavior justified the presumption that
the merits of his case were suspect--that his case lacked merit.

 In contrast to Oscar's application seeking to probate a 1981 will that left everything
to Lillian's three sons if her husband predeceased her with a codicil appointing Oscar as
independent executor, Jeffrey's application sought the probate of a 1996 will that left
everything to Jeffrey and appointed him executor. From 1989 to 1997, Lillian lived with
Jeffrey. During this time, Lillian allegedly executed the 1996 will that revoked the 1981 will. 
In addition, Jeffrey testified at his deposition that he withdrew over $800,000 in stock from
a Merrill Lynch joint account that Lillian allegedly opened with Jeffrey on May 2, 1997. 
Despite being ordered to do so by the probate court, Jeffrey refused to account for money
he withdrew for a three-year period from the date Oscar was appointed Lillian's temporary
guardian on December 18, 1997.

 Furthermore, the record includes a July 28, 1999 affidavit of Lillian's treating
physician, A. Lee Guinn, Jr., M.D. (7) In this affidavit, Dr. Guinn attested that Lillian had been
his patient periodically since 1990. Dr. Guinn stated that he examined Lillian on June 10,
1996, to determine whether a guardianship would be appropriate. Based on that
examination, it was Dr. Guinn's opinion that Lillian "was incapable of personally handling
or making the decision concerning a bank account or financial matters" and that she was
not mentally competent "to contract." Because of her advancing years and a progressive
brain disorder, it was his opinion that "[Lillian's] mental capacity would have remained the
same after June 10, 1996, or [would have] become progressively worse." Dr. Quinn
concluded with the following: "Therefore, I am of the opinion that Lillian M. Buck would not
have had the mental capacity or competence to enter into a contract with Merrill Lynch,
Pierce, Fenner & Smith, Incorporated on May 2, 1997, to open a joint account with her
grandson, Jeffrey A. Buck."

 In addition, Jeffrey's repeated failures to comply with the trial court's orders and with
the discovery rules justifies the presumption that the merits of his case were suspect--that
his application to probate the 1996 will lacked merit. Certainly, Jeffrey engaged in an
extensive course of discovery abuse. Had Jeffrey not delayed the process through his
discovery abuse, the claims made by both parties would have been facilitated. Because
of Jeffrey's actions, the probate court could have presumed Jeffrey's application, as well
as his other pleadings, lacked merit.

 Jeffrey was also the applicant who filed the 1996 will for probate. Based on that
filing, the probate court could have presumed that Jeffrey would be willing to establish the
validity of the 1996 will through his testimony and to account for his withdrawal of funds if
his claims had merit. Without such co-operation, the trial court was left with no other
conclusion than that Jeffrey's claim lacked merit. Therefore, Jeffrey did not prove that the
sanctions were excessive because his claim had merit, and no substantial error was
shown.

b. Lesser Sanctions

 Jeffrey also argues that less severe sanctions were available and should have been
considered before the probate court struck his pleadings. He contends that, subsequent
to his filing his application to probate the 1996 will, he had not been sanctioned; rather the
probate court had only imposed different costs, including an assessment of a $5,000
security cost at the hearing he failed to attend. Jeffrey contends that his behavior was not
so egregious as to alleviate the probate court of its burden to use a lesser sanction rather
than to dismiss his application. We disagree with Jeffrey's assertions.

 There were numerous instances of discovery abuse for which the probate court
tailored lesser sanctions in an effort to rectify the abuse, including those Jeffrey describes
above as non-sanctions. In violation of court orders, Jeffrey failed to appear for
depositions; failed to provide a sworn accounting; failed to pay fees; and failed to appear
to give testimony on Oscar's motion to rule on costs.

 The probate court is not required to impose every possible less severe sanction
before striking a party's pleadings. See TransAmerican, 811 S.W.2d at 917. In this case,
the probate court not only considered less severe sanctions, the record reflects that it
imposed lesser sanctions before dismissing his application in an effort to secure
compliance. Id. Knowing that sanctions were imminent, Jeffrey continued to disregard the
probate court's orders. The probate court was also familiar with the history of this litigation. 
At the bill of review hearing the probate judge stated:

 I think the record will show that as of May the 31st, 1985 when this Court was
established that [sic] I have never sanctioned anybody, never, until this
occasion. And I have never seen a proceeding in this court that was in such
disarray and so uncooperative as this was to that very point. . . . I've never
sanctioned anyone except this case, and the reason it evolved was the
terrible nature of this experience for the Court and for the parties. It was - it
was quite an interesting case not from the standpoint of being adversarial but
from the part of your client [Jeffrey] and his brother [James] for what went on
before this up to this point [sic]. It was really quite tough.

 Clearly the evidence establishes that the lesser sanctions imposed over the course
of the proceedings were inadequate. The discovery abuse continued through the second
phase of the proceedings--when Jeffrey filed a new application to probate the 1996
will--after the probate court had stricken Jeffrey's earlier pleadings. After imposing lesser
sanctions, the probate court finally issued the death penalty sanction order being
challenged by Jeffrey's bill of review. Thus, Jeffrey did not prove that the sanctions were
excessive because lesser sanctions were not considered and, again, no substantial error
is shown.


4. Notice

 Finally, in his first issue, Jeffrey appears to be arguing that he proved substantial
error by the probate court in striking his pleadings because the he lacked notice of the
sanction hearings. We disagree.

 The record reflects Jeffrey did not appear at the September 10 sanctions hearing
on Oscar's motion for costs. At the bill of review hearing, Jeffrey testified that he did not
appear on September 10 because he had not been provided notice of the hearing by his
attorney; that he "had a falling out with [his counsel]"; and that "[t]here was a failure to
communicate." Nonetheless, based on his testimony, Jeffrey's attorney apparently had
notice of the September 10 hearing, and it is undisputed that his attorney had notice of the
September 22 sanction hearing. Therefore, we conclude that Jeffrey received notice of
these sanction hearings because "[n]otice to an attorney, acquired during the existence of
the attorney-client relationship, is imputed to the client." Allied Res., 871 S.W.2d at 778.

 Furthermore, even though the final sanction hearing did not take place until
September 27, it is also undisputed that Jeffrey was present in the court room at the time
of that hearing. In addition, while Jeffrey's attorney requested leave of court to withdraw
his representation during the hearing, Jeffrey had already effectively been notified of the
hearing through his attorney's notification, which is undisputed. See id. Thus, substantial
error has not been proven on the basis of lack of notice, and Jeffrey's argument fails.

 After hearing the evidence, considering the record, and recalling the entire history
of the litigation, the probate court could have properly determined that notice was given
and that the death penalty sanction was justified in this case. Jeffrey did not prove that he
lacked notice of the sanction hearings. He did not prove that there was not a direct
relationship between his conduct and the sanction imposed or that the sanction was
excessive. Given Jeffrey's burden of proof in the probate court, the discretionary nature
of the act Jeffrey challenged, and the record before this court, we conclude that Jeffrey
failed to establish that the probate court made a substantial error in striking his pleadings,
and, thus, Jeffrey failed to prove all of the essential elements of his statutory bill of review. 
See Tex. Probate Code § 31. We overrule Jeffrey's first issue.

IV. Conclusion

 We affirm.

 

 NELDA V. RODRIGUEZ

 Justice


Opinion delivered and filed 

this 28th day of May, 2009.
1. Appellant Jeffrey Buck filed his statutory bill of review to set aside a September 27, 2004 death
penalty sanction order and a September 28, 2004 order that admitted his grandmother's 1981 will to probate. 
Jeffrey states that he is appealing from both orders. However, because Jeffrey's contentions relate only to
the sanctions order and because our determination of those issues is dispositive of this appeal, we need not
address the trial court's probate order. See Tex. R. App. P. 47.1.
2. The account was allegedly co-owned by Lillian and Jeffrey. However, the record reflects that Lillian's
doctor attested that she would not have had the mental capacity to open a joint account with Jeffrey at Merrill
Lynch. Oscar ultimately reached a settlement with Merrill Lynch which was approved by the probate court.
3. Jeffrey testified at the bill of review hearing that his attorney, John Tinder, represented him up until
September 27, 2004. The record does show, however, that Jeffrey represented himself, pro se, at times
during the lawsuit.
4. Jeffrey asserts that his statutory bill of review and motion to set aside the probate of the 1981 will was
filed pursuant to probate code sections 31 and 93. See Tex. Probate Code Ann. §§ 31, 93 (Vernon 2003). 
Although he refers to section 93 in his appellate brief, the arguments made on appeal, are section 31 bill of
review challenges and not section 93 challenges to the validity of a will that has been admitted to probate. 
Accordingly, we will address Jeffrey's contentions as bill of review challenges. See Tex. R. App. P. 47.1.
5. The Texas Supreme Court expressed the constituent elements of an interested person as follows: 
"[the interested person] must have a pecuniary [interest] held by him either as an individual or in a
representative capacity which will be affected by the probate or defeat of the will." Logan v. Thomason, 146
Tex. 37, 202 S.W.2d 212, 215 (1947).
6. For example, in his first issue, Jeffrey contends that it was error for the probate court to grant death
penalty sanctions during the pending probate proceeding prior to the final determination as to which will should
have been probated. He also contends in the first issue that the sanction was an abuse of discretion because
the parties' applications were pending trial on the merits as mandated by section 83(a).
7. At the bill of review hearing, the probate court took judicial notice of its entire file. The affidavit of A.
Lee Guinn, Jr., M.D., was attached to Oscar's response to Jeffrey's motion for summary judgment.