ACCEPTED
01-15-00019-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
2/17/2015 4:19:39 PM
CHRISTOPHER PRINE
CLERK

# No. 01-15-00019-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
2/17/2015 4:19:39 PM
CHRISTOPHER A. PRINE
Clerk

IN THE
COURT OF APPEALS
FOR THE
FIRST DISTRICT OF TEXAS

In Re
CHARLES S. IUPE, JR.,
*Relator.*

Original Proceeding on Petition for Writ of Habeas Corpus
from the Harris County, Texas Probate Court Number Three (3)
Hon. Rory R. Olsen, Presiding, Trial Court Cause No. 417,216

RELATOR CHARLES S. IUPE, JR.'S REPLY
TO REAL PARTY-IN-INTEREST MICHAEL J. IUPE'S
RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS

Howard M. Reiner
Texas Bar No. 16754780
problaw@aol.com
Howard M. Reiner & Associates
3410 Mercer Street
Houston, Texas 77027
Tel: (713) 963-8004
Fax: (713) 963-8044

Jonathan S. Stoger
Texas Bar No. 00797504
jstoger@stogerlaw.com
The Stoger Law Firm
2301 Morse
Houston, Texas 77019
Tel: (713) 522-2848
Fax: (713) 522-1120

*Attorneys for Relator*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................1

INDEX OF AUTHORITIES............................................................................2

REPLY........................................................................................................5

   I. Summary of the Reply...........................................................................5

   II. The Response Ignores the Lack of Notice and an Opportunity to Be Heard .....6

   III. The Response Misstates the Effect of Lack of Verification of Service ..........10

   IV. The Response Misconstrues the Facts and Goes Far Outside the Record ......12

   V. Proposed Wards May Not Be Held in Contempt over Mental Examinations..15

   VI. Conclusion .......................................................................................18

PRAYER ...................................................................................................19

SIGNATURE ...............................................................................................19

CERTIFICATION ..........................................................................................20

CERTIFICATE OF COMPLIANCE .....................................................................20

CERTIFICATE OF SERVICE ............................................................................21

1

# INDEX OF AUTHORITIES

**Cases**

*Buck v. Estate of Buck*,
   291 S.W.3d 46 (Tex. App.—Corpus Christi 2009, no pet.) ................................15

*Coleson v. Bethan*,
   931 S.W.2d 706 (Tex. App.—Fort Worth 1996, no writ) ...................................15

*Cunningham v. Parkdale Bank*,
   660 S.W.2d 810 (Tex. 1983) .............................................................................15

*Ex parte Alloju*,
   907 S.W.2d 486 (Tex. 1995) ................................................................................9

*Ex parte Barnett*,
   600 S.W.2d 252 (Tex. 1980) ................................................................................7

*Ex parte Cooper*,
   657 S.W.2d 435 (Tex. Cr. App. 1983) .................................................................9

*Ex parte Gordon*,
   584 S.W.2d 686 (Tex. 1979) ................................................................................9

*Ex parte Herring*,
   438 S.W.2d 801 (Tex. 1969) ...................................................................... 10, 12

*Ex parte Knable*,
   818 S.W.2d 811 (Tex. Cr. App. 1991) .................................................................9

*Ex parte Proctor*,
   398 S.W.2d 917 (Tex. 1966) ................................................................................8

*Ex parte Shaklee*,
   939 S.W.2d 144 (Tex. 1997) (per curiam) ...........................................................7

*In re Houston*,
   92 S.W.3d 870 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding) .........8

*Mathis v. Lockwood*,
   166 S.W.3d 743 (Tex. 2005)........................................................................11

*Silver B & Laviolette, LLC v. GH Contracting, Inc.*,
   No. 03-10-00091-CV, 2010 Tex. App. LEXIS 8327
   (Tex. App.—Austin Oct. 12, 2010, no pet.) ...............................................11

*Wojcik v. Wesolick*,
   97 S.W.3d 335 (Tex. App.—Houston [14th Dist.] 2003, no pet.).................16

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 132.001(c) .............................................11

TEX. EST. CODE § 1001.002 ........................................................................17

TEX. EST. CODE § 1002.017(2) ....................................................................18

TEX. EST. CODE § 1054.006 ........................................................................15

TEX. EST. CODE § 1101.103(c) ....................................................................16

TEX. EST. CODE § 1102.001 ........................................................................17

TEX. EST. CODE § 1102.002 ........................................................................17

TEX. EST. CODE § 53.001..............................................................................17

TEX. GOV'T CODE § 312.011(1).....................................................................11

**Rules**

TEX. R. CIV. P. 107 .......................................................................................10

TEX. R. CIV. P. 2 ...........................................................................................15

TEX. R. CIV. P. 21(f)(7)(A)............................................................................11

TEX. R. CIV. P. 215.2(b)(6)............................................................................15

TEX. R. CIV. P. 21a ...................................................................... 10, 11

# No. 01-15-00019-CV

IN THE
COURT OF APPEALS
FOR THE
FIRST DISTRICT OF TEXAS

In Re
CHARLES S. IUPE, JR.,
*Relator.*

Original Proceeding on Petition for Writ of Habeas Corpus
from the Harris County, Texas Probate Court Number Three (3)
Hon. Rory R. Olsen, Presiding, Trial Court Cause No. 417,216

RELATOR CHARLES S. IUPE, JR.'S REPLY
TO REAL PARTY-IN-INTEREST MICHAEL J. IUPE'S
RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS

Relator, Charles S. Iupe, Jr., files this reply to Real Party-in-Interest, Michael J. Iupe's, Response to Petition for Writ of Habeas Corpus:

## I. Summary of the Reply

Michael's response completely ignores the primary issue raised in the habeas corpus petition, i.e., that Charles' due process rights were violated when the probate court summarily found him in constructive contempt without issuing a show cause order and conducting a hearing. The response instead attempts to divert attention to a contempt charge that Charles has **never** been found guilty of, failure to submit to

a mental examination, and smears Charles' name with accusations of incompetency that go far outside the record and shade the meaning of the facts. To be clear, Charles denies the accusations in their entirety and stands, as a testament to his mental capacity, on his strong record of entrepreneurial accomplishments, including establishing and running a vast private warehouse complex at the Port of Houston. That Michael would even think of seeking to have his brother held in contempt and thrown in jail exposes that the true motive for guardianship is not Charles' welfare but a Cain-and-Abel plot to gain control of his fortune.[1]

## II. The Response Ignores the Lack of Notice and an Opportunity to Be Heard

Michael does not dispute that no show cause orders were issued on the failure to appear charge and that no hearings were held on the charge. To recap, the contempt judgment recites that a show cause order was issued on September 16, 2014, setting an October 9, 2014 hearing on Michael's motion for contempt related to the mental examination issue, and that Charles failed to attend the October 9 hearing. (R. 90-95; SR. 43-46). From October 9 forward, the court issued no show cause orders charging Charles with failure to appear at the October 9 hearing and conducted no hearings on the charge. (R. 1-16; SR. 47-57). Despite this, on December 18, 2014, the court summarily held Charles in criminal contempt for

---

[1] This reply only focuses on the main issues raised by the petition and response. Reference is made to the petition for a full and complete explanation of all issues.

6

failure to appear and sentenced him to 30 days in jail and a $500.00 fine.[2] (R. 90-95; SR. 43-46).

The only finding in the judgment is that, "**CHARLES S. IUPE, JR.** is guilty of violating the court's September 16, 2014 order in that he failed to personally appear in this Court on October 9th [sic], 2014 at 2:30 p.m." (R. 90-95; SR. 43-46) (emphasis in original). The court ordered that "punishment is imposed" and that "**CHARLES S. IUPE JR.** [sic] is to be confined to the Harris County Jail for a period of 30 consecutive days and that **CHARLES S. IUPE JR.** [sic] shall be fined $500.00." (R. 90-95; SR. 43-46) (emphasis in original).

Notwithstanding that those were the only findings and decretals in the judgment, Michael suggests that it can be upheld on a civil contempt theory by reading implied terms into the judgment subjecting Charles to confinement until he submits to a mental examination. That position is wrong: a "contempt order must clearly state in what respect the court's [earlier] order has been violated." *Ex parte Shaklee*, 939 S.W.2d 144, 145 (Tex. 1997) (per curiam) (alteration in original; quoting *Ex parte Barnett*, 600 S.W.2d 252, 256 (Tex. 1980)). Nothing about the judgment references the violation of any mental examination orders. Further, if the judgment were civil in nature, it would have to spell out "in what respect the court's

---

[2] If Charles had not been away from home when the constables first tried to arrest him, he would have literally been forced to spend Christmas in jail.

order has been violated and that the party is committed to jail until the court's order is complied with to the extent required by the court," something it does not do. *Ex parte Proctor*, 398 S.W.2d 917, 918 (Tex. 1966). Moreover, reading implied terms into the judgment would render it void because a "contempt order is insufficient if its interpretation requires inferences or conclusions about which reasonable persons might differ." *In re Houston*, 92 S.W.3d 870, 877 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding).

Michael also makes an opaque argument that his August 26, 2014 motion for contempt over the mental examination issue, which requested issuance of a writ of attachment if Charles were to fail to appear at the contempt hearing, can somehow convert the judgment into a writ of attachment to stand trial on the original mental examination charge and/or that the judgment can be supported as a "least restrictive alternative" for alleged failure to appear at other show cause hearings. The motion cannot have such an effect. The judgment is complete in and of itself, sentencing Charles to an unconditional term of incarceration and fine, and does not purport to be a writ of attachment. (R. 90-95; SR. 43-46). Any argument to the contrary confuses the remedy for failure to appear with the ultimate disposition of a contempt hearing. *See Ex parte Johnson*, 654 S.W.2d 415, 422 (Tex. 1983) (alleged contemnor may not be tried *ex parte* but must instead be haled into court). The "least restrictive means" argument is inscrutable. There are no findings that Charles failed to appear

8

at prior hearings and he was never found guilty of such.[3] Further, Michael cites no authority and cannot explain why a contempt judgment that violates due process can be upheld as a "least restrictive means." The argument makes no legal sense.

The reality, which Michael does not deign to respond to, is that Charles could not be held in contempt for failure to appear, a form of constructive contempt, without issuance of a new show cause order and a new hearing. *See Ex parte Cooper*, 657 S.W.2d 435, 437 (Tex. Cr. App. 1983) (holding that failure to appear for a contempt hearing is a form of constructive contempt and that the alleged contemnor may not be found guilty of it absent issuance of a new show cause order and a separate hearing on the charge); *see also Ex parte Alloju*, 907 S.W.2d 486, 487 (Tex. 1995) (citing *Cooper* and explaining that "Constructive contempt is a violation of a court order outside the presence of the court, including failure to appear for a hearing."). Due process requires notice and an opportunity to be heard before a constructive contempt charge may be tried. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979). Further, even if, *arguendo*, the contempt were direct, the power to summarily punish lapsed without the presence of exigent circumstances, and notice and an opportunity to be heard were still required. *See Ex parte Knable*, 818 S.W.2d 811, 812-12 (Tex. Cr. App. 1991).

---

[3] The prior hearings were cancelled because of defects with the the pleadings and problems with service.

9

## III. The Response Misstates the Effect of Lack of Verification of Service

Michael does not dispute the heart of Charles' defective service argument. To recap, due process requires personal service of a show cause order or proof that the contemnor had actual knowledge of it. *Ex parte Herring*, 438 S.W.2d 801, 803 (Tex. 1969). To find Charles guilty of contempt for failing to attend the October 9 hearing, there would have to be proof he was served with a show cause order to appear or had actual knowledge of it. The record does not support the court's affirmative finding about such notice, as the return of service for the show cause order on such hearing is defective for lack of a proper verification. (R. 93).

The return of service reflects that the show cause order was allegedly served by a private process server, an A.J. Simpson. (*Id.*). Mr. Simpson purportedly executed the return under oath, but the problem is that he did not hand sign it – it instead bears an electronic "slash /s/" signature. (*Id.*).

Mr. Simpson's service and return, whether accomplished under TEX. R. CIV. P. 21a (for service of post-citation documents) or TEX. R. CIV. P. 107 (for service of citations), had to be verified under oath by him in order to be valid. *See* TEX. R. CIV. P. 21a(e) (proof of service requires certification by a party or attorney, the return of an officer, or the affidavit of a third party); TEX. R. CIV. P. 107(e) (the return of service must be executed by an officer, of if service is done privately, then it must be executed under oath by the private process server). The electronic

10

signature by the private process server here does not suffice, because documents executed under oath must bear the handwritten signature of the affiant or declarant. *See* TEX. R. CIV. P. 21(f)(7)(A) (documents may be filed electronically with an electronic "slash /s/" "unless the document is notarized or sworn"); TEX. CIV. PRAC. & REM. CODE § 132.001(c) (declarations must be subscribed); TEX. GOV'T CODE § 312.011(1) (affidavit must be subscribed).

Michael does not dispute the hand-written signature requirement but instead argues that it is beside the point because service under Rule 21a raises a presumption that notice was received, and cites *Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005) (overturning a post-answer default judgment against a pro se party because there was no certificate of service on the trial setting notice and she denied receiving it) and *Silver B & Laviolette, LLC v. GH Contracting, Inc.*, No. 03-10-00091-CV, 2010 Tex. App. LEXIS 8327, at *4-6 (Tex. App.—Austin Oct. 12, 2010, no pet.) (affirming a default judgment against a party who did not deny receiving the citation but instead claimed a mismatch between the address in the citation and the address in the return). Those cases are factually distinct, but even so, Michael fails to appreciate that the presumption of receipt arises **only** when there has been valid service, which, because of the lack of proper verification here, did not occur.

The handwritten signature requirement is not merely academic. Hand-signatures provide much stronger assurance that the affiant or declarant has actually

11

read the document and given it full attention. An electronic "slash /s/ signature" can be generated automatically by anyone and does not provide the same level of assurance that the document has actually been reviewed. So, when proof of service is at issue and a party can be subjected to default judgment or contempt, the high level of assurance of hand-written signatures is not only good policy but is required.

Finally, there is absolutely no evidence that Charles had actual knowledge of the hearing. Without valid service or actual knowledge, the contempt judgment violates Charles' due process rights and is void. *See Ex parte Herring*, *supra.*

## IV. The Response Misconstrues the Facts and Goes Far Outside the Record

The response goes far outside the record to make scurrilous and unsupported allegations about Charles' mental acuity, family relationships, and ability to handle his own affairs. No one – not Charles' three adult children or any other family members – has moved for guardianship except for Michael.

To recap, the official court investigator for the probate court, Tara Zinn, a licensed social worker, had several telephone conversations with Charles and met him for two separate interviews at his home and office. (R. 43-53). He informed her that he has done very well in the real estate and finance business and can take care of himself. (R. 48). He said that Michael moved to Austin in 2003, that they rarely see each other, and that Michael has been jealous of his financial success. (*Id.*). He believed that Michael found out about partnership litigation involving his Cedar

12

Crossing warehouse business and was determined to interfere. (*Id.*). He said that the only reason he, in 2006, designated Michael as attorney-in-fact and prospective future guardian was that he was travelling abroad for business and wanted to name someone if something happened during his travels. (R. 49). He regretted the designation and was very upset and embarrassed by the guardianship case. (*Id.*).

Ms. Zinn concluded her report with the finding that, "Based on the aforementioned, and the lack of medical evidence, it appears that a guardianship is not necessary at this time." (R. 51).

The guardianship proceedings should have ceased at that point, but Michael insists on driving them forward. In his response to petition for habeas corpus, he makes wild allegations totally unsupported by the record. For example, he claims that Charles suffers from psychosis and paranoia but cites nothing but the allegations in his own guardianship application. He also claims, citing nothing, that Charles is paranoid and barricades himself in his condominium, something that is patently false as demonstrated by the fact that Charles met with Ms. Zinn at his office and at home. He claims that Charles hired him to prepare his taxes but again cites nothing in the record. Michael also tries to present himself as a close brother who holds power of attorney, but Charles explained to Ms. Zinn that he only appointed him out of concern for international travel and regretted doing so. (R. 48). Most despicably,

without citing anything, he alleges that Charles threatened his own children's safety and inheritance. Charles denies all of these allegations.

Michael also seeks to take refuge in the guardian-ad-litem's report and motion for mental health examination. However, he fails to note that the report and motion are based in large part on his own allegations. And he fails to note that the guardian-ad-litem has never moved to hold Charles in contempt and has not opposed this petition for habeas corpus.

Finally, Michael mischaracterizes a letter that Charles purportedly filed with the court on October 7, 2014.[4] To begin with, at the October 9, 2014 hearing, the probate court sustained the undersigned's objection to admissibility of the letter on hearsay and authentication grounds. (SR. 7-11). But even so, the letter is not a sign of paranoia, as Michael claims, but a well-crafted and rational expression of frustration with the guardianship process and interference with his attempt to hire private counsel. Given that the Estates Code effectively creates a presumption that proposed wards do not have capacity to retain their own private counsel and denies them such choice, absent a formal hearing at which the probate court finds otherwise and replaces the court-appointed attorney-ad-litem with their own choice of attorney,

---

[4] There is no evidence that the letter, if authentic, was filed in response to the October 9 hearing. It does not indicate such in the body of the letter and the letter could have easily been filed in reaction to the guardianship case as a whole or prior hearings in the case.

14

it is not surprising that Charles would have a healthy skepticism of the process. *See* TEX. EST. CODE § 1054.006.

## V. <u>Proposed Wards May Not Be Held in Contempt over Mental Examinations</u>

Because Charles was **not** found in contempt for alleged failure to submit to a mental examination, the issue of whether the probate court has the power to do so is not squarely before the court here. But even if it were, the confluence of the Estates Code and the Texas Rules of Civil Procedure leads to the conclusion that the probate court does not have that power.

The Rules of Civil Procedure govern in probate and guardianship proceedings except when there is a specific Estates Code provision to the contrary. *See* TEX. R. CIV. P. 2 (rules of civil procedure apply in all civil cases, including probate and guardianship matters); *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812 (Tex. 1983) (the Rules of Civil Procedure apply in probate cases except when there is a specific probate statute to the contrary); *Buck v. Estate of Buck*, 291 S.W.3d 46, 53-56 (Tex. App.—Corpus Christi 2009, no pet.) (applying TEX. R. CIV. P. 215.2(b)(6) discovery sanctions rule to a will proponent); *Coleson v. Bethan*, 931 S.W.2d 706, 712 (Tex. App.—Fort Worth 1996, no writ) ("Where the Probate Code is silent, the Texas Rules of Civil Procedure govern the procedures to be followed…."). Under TEX. R. CIV. P. 215.2(b)(6), which governs failure to comply with a discovery request or order, the court may not hold a party in contempt for disobeying "an order

15

to submit to a physical or mental examination." Because that provision controls here, since there is no Estates Code provision to the contrary, Charles may not be held in contempt for alleged refusal to undergo a mental examination.

Michael argues to the contrary citing amorphous and unspecified principles of equity. Since he has not cited any authority to support this theory, he has waived the point. *See* TEX. R. APP. P. 38.1(i). But even so, there simply are no principles of equity that support holding proposed wards in contempt, and indeed, incarcerating someone who is alleged to be incompetent violates basic notions of equity.

He also cites various Estates Code provisions, none of which help him. He cites to TEX. EST. CODE § 1101.103(c), which specifies that "the court may appoint the necessary physicians to examine the proposed ward." Although the court may have the power to appoint a physician under that section, the statute does not confer authority on the court to compel the proposed ward to participate in such examination or to hold the proposed ward in contempt for non-participation. Naturally, any such order would be subject to Rule 215 and its proscription against contempt. Michael may take issue with the way section 1101.103(c) is drafted and the lack of enforcement provisions, but it is the court's duty to interpret and apply the statute as written. *See Wojcik v. Wesolick*, 97 S.W.3d 335, 338 (Tex. App.— Houston [14th Dist.] 2003, no pet.) ("We are not responsible for any omissions in

16

the statute [the Probate Code].”). If he has an issue with the statute, he should take it up with the Legislature.

Michael also cites TEX. EST. CODE § 1102.001, which provides that a court may, upon probable cause, initiate an investigation for a proposed ward by appointing “a guardian ad litem or court investigator.” The succeeding section, TEX. EST. CODE § 1102.002, which specifies that a court may, to establish probable cause under section 1102.001, require an information letter from an interested person or a physician’s certificate, says nothing about appointing physicians or requiring proposed wards to participate in an examination.

The same goes to Michael’s citation to TEX. EST. CODE § 53.001, which provides that, “A judge may enforce the judge’s lawful orders against an executor or administrator by attachment and confinement. **Unless this title expressly provides other, the term of confinement for any one offense under this section may not exceed three days**.” (emphasis added). Not only is Charles not an executor, administrator, or guardian, but even if he were, in the highlighted portion, which Michael omits from his quotation of the statute, Charles could not be incarcerated more than three days. Since the sentence here was thirty days, it is obvious that the court did not rely on the statute in finding Charles in contempt.

Further, TEX. EST. CODE § 1001.002, which provides that the laws governing decedent’s estates apply to guardianships to the extent there is no inconsistency, does

17

not help Michael either. There is absolutely nothing in the decedent's estates sections of the Code that would justify holding Charles in contempt.

Ultimately, guardianships are reserved for very serious situations where a person is incapacitated by physical or mental examination to the extent that he or she is substantially unable to: provide food, clothing, or shelter for himself or herself; or care for the person's own physical health; or manage the person's own financial affairs. TEX. EST. CODE § 1002.017(2). It is not hard to imagine that when a person has deteriorated to that point, there would be a long trail of medical evidence supporting the need for guardianship. That the Legislature chose not to include enforcement provisions in the Estates Code reflects that realization and represents a conscious choice to protect those who are not interested in guardianship from being forced to undergo a highly intrusive mental examination they oppose. There is no evidence that Charles falls under section 1002.017(2), as the court investigator found he did not need a guardianship, and under Rule 215, he cannot be held in contempt for demurring to a mental examination.

## VI. Conclusion

Charles has never received his day in court on the failure to appear charge and is entitled to habeas corpus relief. The probate court violated his constitutional rights by summarily adjudging him in contempt without affording him notice and an opportunity to be heard on the charge. Further, given that the return of service for

18

the mental examination hearing is invalid for lack of proper verification, there is no evidence that he even received notice of the hearing he was found in contempt for not appearing at. Finally, the contempt judgment is not based on the alleged failure to submit to a mental examination, but even if it were, Rule 215 shields Charles from being held in contempt.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Relator, Charles S. Iupe, Jr., continues to pray that his Petition for Writ of Habeas Corpus be granted in all things and that a Writ of Habeas Corpus be issued, that the original and nunc pro tunc contempt judgments and orders of commitment be declared null and void, that he be ordered permanently discharged from custody and that the fine imposed against him be remitted and cancelled, that he be discharged from bond and that his cash bond money be ordered returned, and that he be granted his costs and any further relief that he is entitled to.

Respectfully submitted,

/s/ Howard M. Reiner
Howard M. Reiner
Texas Bar No. 16754780
problaw@aol.com
Howard M. Reiner & Associates
3410 Mercer Street
Houston, Texas 77027
Tel: (713) 963-8004
Fax: (713) 963-8044

/s/ Jonathan S. Stoger
Jonathan S. Stoger
Texas Bar No. 00797504
jstoger@stogerlaw.com
The Stoger Law Firm
2301 Morse
Houston, Texas 77019
Tel: (713) 522-2848
Fax: (713) 522-1120

| | |
|---|---|
| Attorney-ad-Litem for Relator Charles S. Iupe, Jr. | Co-Counsel with Attorney-ad-Litem for Relator Charles S. Iupe, Jr. |

## CERTIFICATION

I, attorney-ad-litem for Relator, Charles S. Iupe, Jr., certify that I have reviewed this Reply and concluded that every factual statement in this reply is supported by competent evidence included in the original record and/or supplemental record in this cause.

/s/ Howard M. Reiner
Howard M. Reiner

## CERTIFICATE OF COMPLIANCE

I certify that this document contains 3,800 words, as measured by the word count feature in Microsoft Word 2013, and was prepared in Times New Roman 14 point font for the main text and Times New Roman 12 point font for the footnote text.

/s/ Howard M. Reiner
Howard M. Reiner

## CERTIFICATE OF SERVICE

I certify that on February 17, 2015, I served a true and correct copy of this Reply on all parties and counsel, as reflected below, via e-service through efile.txcourts.gov.

/s/ Howard M. Reiner
Howard M. Reiner

Darlene Payne Smith
dsmith@craincaton.com
Alec Bayer Covey
acovey@craincaton.com
Crain, Caton & James, P.C.
1401 McKinney Street, Suite 1700
Houston, Texas 77019
Tel: (713) 658-2323
Fax: (713) 658-1921

Attorneys for Real Party-in-Interest
Michael J. Iupe

Fatima Breland
fbreland@sbcglobal.net
The Breland Law Firm
2726 Bissonnet Street, No. 240-194
Houston, Texas 77005
Tel: (713) 661-1335
Fax: (713) 660-9264

Guardian-ad-Litem for Relator
Charles S. Iupe, Jr.

Hon. Rory Olsen, Presiding Judge
Harris County Probate Court Number Three
201 Caroline, 7th Floor
Houston, Texas 77002
(Via e-filing with County Clerk)

21